Elbert W. WILLIAMSON,
Petitioner–Appellant,

v.

Christine O. GREGOIRE,
Respondent–Appellee.

Nos. 97–35699.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1998.

Decided Aug. 3, 1998.

Thomas M. Kummerow, Washington Appellate Project, Seattle, Washington, for the petitioner–appellant.

John J. Samson, Assistant Attorney General, Olympia, Washington, for the respondent–appellee.

Before: CANBY and TASHIMA, Circuit Judges, and EZRA, District Judge.*

TASHIMA, Circuit Judge:

We must decide whether a convicted child molester who has completed his sentence, but who must register as a sex offender under a so-called "Megan's law," is "in custody" for purposes of federal habeas corpus.

### I.

In 1990, Elbert W. Williamson was convicted in Washington state court of first degree child molestation, and was sentenced to one year of community placement. Williamson served his term of community placement, and was discharged from his sentence in August, 1994.

Although Williamson's criminal punishment has come to an end, he must now register as a sex offender under Washington law. Specifically, that means that two general types of legal disabilities now apply to Williamson:

### A.  Registration

Williamson must register with the county sheriff for the county of his residence, and

provide his name, address, date and place of birth, place of employment, crime for which he was convicted, date and place of conviction, any aliases used, and his social security number. RCW. 9A.44.130(1), (3). *See also* RCW 9A.44.130(4) (prescribing the deadlines for registration). Every year, Williamson must verify his address. RCW 9A.44.135(1).

When Williamson registers with the county sheriff, the sheriff must make reasonable attempts to verify Williamson's address, including sending certified mail to that address every year, and talking in person with residents at that address if the offender does not sign the return receipt. RCW 9A.44.135(1). If Williamson cannot be located, the sheriff must make reasonable attempts to find him. RCW 9A.44.135(2).

If Williamson moves within the same county, he must notify the county sheriff in writing 14 days before moving. If he moves to a new county, he must notify the new sheriff 14 days before moving and must register within 24 hours of moving. If he moves out of Washington, he must notify the county sheriff in Washington within 10 days of the move. RCW 9A.44.130(5). If Williamson attends an institution of higher education, he must notify the sheriff of his residence of his intent to attend that institution, and the sheriff must notify the institution's department of public safety. RCW 9A.44.130(1).

Failing to register within the time required by law is either a felony or a gross misdemeanor, depending on the nature of the underlying conviction. RCW 9A.44.130(4)(b), (8). Finally, if Williamson desires to change his name in the future, he must follow the same procedures used for changing his address. RCW 4.24.130(3).

### B.  Notification

The county sheriff must forward to the state's central registry of sex offenders the information Williamson provides him. RCW 43.43.540. Public agencies are authorized to release information to the public about Williamson when the agency determines that

---

* The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation.

disclosure of the information is relevant and necessary to protect the public. RCW 4.24.550. *See also Russell v. Gregoire,* 124 F.3d 1079, 1082–83 (9th Cir.1997) (describing the Washington sex offender law), *cert. denied* —— U.S. ——, 118 S.Ct. 1191, 140 L.Ed.2d 321 (1998).

In August, 1995, Williamson filed the instant petition for habeas corpus challenging the validity of his conviction. The district court held that the Washington requirement that Williamson register as a sex offender placed him "in custody" for purposes of federal habeas corpus relief. The district court found, however, that Williamson had not properly raised his constitutional claims before the Washington state courts; it therefore held that he had procedurally defaulted on those claims. It further found that the new evidence Williamson offered failed to demonstrate his actual innocence; thus, that it could not overcome the procedural default. Accordingly, it denied the writ.

This appeal followed. We affirm, albeit on a different ground.

## II.

■ The federal courts have jurisdiction to issue a writ of habeas corpus to someone who "is in custody in violation of the Constitution or laws or treaties of the United States...." 28 U.S.C. § 2241(c)(3). Because the "in custody" requirement is jurisdictional, *Maleng v. Cook,* 490 U.S. 488, 490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (per curiam), it is the first question we must consider on this appeal. We therefore address a novel question of law: Is a convicted child molester who has completed his sentence, but who is required to register as a sex offender under state law, "in custody" for purposes of federal habeas corpus?

At first blush, the answer might seem obvious: Because Williamson is not incarcerated, he does not fall within a common-sense understanding of the phrase "in custody." However, those two words, "in custody," have a long and venerable line of precedent behind them that compels a more complicated analysis. In *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963),

the Supreme Court summarized its prior holdings: "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." *Id.* at 240, 83 S.Ct. 373.

■ The Supreme Court has repeatedly held that "habeas corpus is available to an alien seeking entry into the United States, although in those cases each alien was free to go anywhere else in the world." *Id.* at 239, 83 S.Ct. 373 (citing cases). Similarly, habeas corpus is the proper vehicle to test the legality of one's induction into military service. *Id.* at 240, 83 S.Ct. 373 (citing cases).

The Court has explained that a parolee is "in custody" because, "[w]hile petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom." *Id.* at 243, 83 S.Ct. 373. The Court added: "It is not relevant that conditions and restrictions such as these may be desirable and important parts of the rehabilitative process; what matters is that they significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do." *Id.* at 243, 83 S.Ct. 373.

■ Also, a convict released on his own recognizance pending execution of his sentence is "in custody" because he is obligated to appear at times and places ordered by the court. *Hensley v. Municipal Court,* 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). "He cannot come and go as he pleases." *Id.*

We have held that a sentence of 14 hours of attendance at an alcohol rehabilitation program renders someone "in custody." *Dow v. Circuit Court of the First Circuit,* 995 F.2d 922, 923 (9th Cir.1993) (per curiam). We reasoned that, "[t]he sentence in this case, requiring appellant's physical presence at a particular place, significantly restrains appellant's liberty to do those things which free persons in the United States are entitled to do and therefore must be characterized, for jurisdictional purposes, as 'custody.'" *Id.*

The Third Circuit followed *Dow* to conclude that a sentence of 500 hours of community service also placed someone "in custody." *Barry v. Bergen County Probation Dep't,* 128 F.3d 152, 161 (3rd Cir.1997). The court acknowledged that, as in *Dow,* the petitioner was given a great deal of flexibility to schedule his obligations. But in the end, "an individual who is required to be in a certain place—or in one of several places—to attend meetings or to perform services, is clearly subject to restraints on his liberty not shared by the public generally." *Id.*

Yet, even as the Supreme Court has expanded the reach of the "in custody" requirement, it has consistently recognized a clear limitation: "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng,* 490 U.S. at 492, 109 S.Ct. 1923. Some of the typical collateral consequences of a conviction include the inability to vote, engage in certain businesses, hold public office, or serve as a juror. *Id.* at 491, 109 S.Ct. 1923.

■ Thus, the boundary that limits the "in custody" requirement is the line between a "restraint on liberty" and a "collateral consequence of a conviction." In general, courts hold that the imposition of a fine or the revocation of a license is merely a collateral consequence of conviction, and does not meet the "in custody" requirement. *Barnickel v. United States,* 113 F.3d 704, 706 (7th Cir. 1997) (restitution); *Smullen v. United States,* 94 F.3d 20, 25 (1st Cir.1996) (restitution); *United States v. Gaudet,* 81 F.3d 585, 592 (5th Cir.1996) (fine); *United States v. Watroba,* 56 F.3d 28, 29 (6th Cir.1995) (fine); *United States v. Segler,* 37 F.3d 1131, 1136–37 (5th Cir.1994) (fine); *United States v. Michaud,* 901 F.2d 5, 7 (1st Cir.1990) (per curiam) (fine); *Dremann v. Francis,* 828 F.2d 6, 7 (9th Cir.1987) (per curiam) (fine); *Lefkowitz v. Fair,* 816 F.2d 17, 20 (1st Cir.1987) (revocation of medical license); *Lillios v. New Hampshire,* 788 F.2d 60, 61 (1st Cir. 1986) (per curiam) (fine and suspension of driver's license); *Harts v. Indiana,* 732 F.2d 95, 96–97 (7th Cir.1984) (suspension of driv-er's license); *Tinder v. Paula,* 725 F.2d 801, 804 (1st Cir.1984) (restitution); *Ginsberg v. Abrams,* 702 F.2d 48, 49 (2d Cir.1983) (per curiam) (revocation of license to practice law and disqualification as real estate broker and insurance agent); *Westberry v. Keith,* 434 F.2d 623, 624–25 (5th Cir.1970) (fine and revocation of driver's license). *But see Blaik v. United States,* 117 F.3d 1288, 1295 n. 9 (11th Cir.1997) (suggesting in dicta that a restitution order satisfies the "in custody" requirement).

The question before us, then, is how to characterize the Washington sex offender law. If it is a genuine restraint on liberty, then Williamson is "in custody" and we may consider the merits of his habeas petition. But if application of the sex offender law is merely a collateral consequence of Williamson's conviction, the federal courts are without habeas jurisdiction in this case. We are unaware of any other case that has analyzed the "in custody" requirement as it relates to a similar state law. Nor do we find the precedents interpreting this phrase so closely analogous as to be controlling. Nonetheless, several factors persuade us that the Washington law is more properly characterized as a collateral consequence of conviction rather than as a restraint on liberty.

The precedents that have found a restraint on liberty rely heavily on the notion of a physical sense of liberty—that is, whether the legal disability in question somehow limits the putative habeas petitioner's movement. The Supreme Court justified extending habeas corpus to aliens denied entry into the United States by explaining the denial of entry as an impingement on movement. *Jones,* 371 U.S. at 239, 83 S.Ct. 373. And the Court relied on a similar rationale to explain why a parolee or a convict released on his own recognizance is "in custody." *Id.* at 243, 83 S.Ct. 373; *Hensley,* 411 U.S. at 351, 93 S.Ct. 1571. This circuit similarly explained that mandatory attendance at an alcohol rehabilitation program satisfies the "in custody" requirement because it requires the petitioner's "physical presence at a particular place." *Dow,* 995 F.2d at 923.

Unlike in these precedents, we do not see a significant restraint on Williamson's physi-

cal liberty. The sex offender registration and notification provisions apply to Williamson whether he stays in the same place or whether he moves. Indeed, even if Williamson never leaves his house, he must still verify his address with the sheriff every year. RCW 9A.44.135(1). The Washington sex offender law does not require Williamson even to personally appear at a sheriff's office to register; registration can be accomplished by mail. Thus, the law neither targets Williamson's movement in order to impose special requirements, nor does it demand his physical presence at any time or place. Furthermore, the law does not specify any place in Washington or anywhere else where Williamson may not go. Hence, unlike the excluded alien who can petition for habeas corpus because there is a place in the world to which he is denied entry, *Jones*, 371 U.S. at 239, 83 S.Ct. 373, Williamson cannot say that there is anywhere that the sex offender law prevents him from going.

■ We acknowledge that the registration and notification provisions might create some kind of subjective chill on Williamson's desire to travel. When Williamson moves to a new county, he must provide more information than merely verifying his address, which is all he must do year after year if he stays in the same place. Also, for a serious sex offender, any move to a new county entails some additional public notification. A substantial disincentive to movement might be so severe as to create "custody" for habeas purposes, even in the absence of some outright prohibition on movement. *Cf. Shapiro v. Thompson*, 394 U.S. 618, 629, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (recognizing that a financial disincentive to move can implicate the fundamental right to travel). But whatever chill Williamson might experience on his movement now is purely subjective. It doesn't take a move to a new county to raise the spectre of community notification; the notification provisions are administered by a state agency pursuant to a uniform, statewide policy. *See Russell*, 124 F.3d at 1082. And the registration requirements involved in moving are not much more severe than those involved in not moving. Certainly, the loss of a driver's license amounts to a much greater limitation on one's freedom of movement than does the Washington sex offender law, but the former does not satisfy the "in custody" requirement either. *Lillios*, 788 F.2d at 61; *Harts*, 732 F.2d at 96–97; *Westberry*, 434 F.2d at 624–25. In short, the constraints of this law lack the discernible impediment to movement that typically satisfies the "in custody" requirement.

Obviously, if Williamson fails to follow the registration requirements of the Washington law, he could be criminally prosecuted, and the resulting sentence might very well limit his movement, for example, through incarceration. But this potentiality for future incarceration, dependent entirely on whether Williamson chooses to obey the Washington statute, actually makes the sex offender law very similar to the restitution orders that other courts have found not to create custody. *E.g., Michaud*, 901 F.2d at 7 ("A monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement . . . . [n]or does potential future incarceration for failure to pay such a fine provide the requisite subject matter jurisdiction.") (citations omitted). We do not think that the mere potential for future incarceration, without any present restraint on liberty, can satisfy the "in custody" requirement.

Another reason to find that the Washington sex offender law creates a mere collateral consequence of conviction is, as we explained in *Russell*, that the Washington law is "regulatory and not punitive," and therefore did not amount to punishment within the meaning of the Ex Post Facto Clause. 124 F.3d at 1093. *Russell* is not directly controlling, of course, because the "in custody" requirement may be satisfied by restraints other than criminal punishment, such as conscription into military service or a denial of immigration. But *Russell*'s conclusion that the sex offender law is a form of civil regulation bolsters our conclusion that the registration and notification provisions are more analogous to a loss of the right to vote or own firearms, or the loss of a professional license, rather than probation or parole.

We hold that the Washington sex offender law does not place Williamson "in custody" for purposes of federal habeas corpus. The

district court, therefore, lacked jurisdiction over Williamson's habeas petition. For this reason, the judgment of the district court denying the petition for habeas corpus is **AFFIRMED**.