**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HUGO RANGEL RESENDIZ,
          *Petitioner-Appellant,*

v.

LEONARD KOVENSKY, Acting
Director, Immigration and
Naturalization Service,
          *Respondent-Appellee.*

No. 03-55136

D.C. No.
CV-02-00104-PA

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
April 8, 2005—Pasadena, California

Filed June 27, 2005

Before: Mary M. Schroeder, Chief Judge, Harry Pregerson,
and Stephen S. Trott, Circuit Judges.

Opinion by Judge Trott

**COUNSEL**

Phillip A. Trevino, Los Angeles, California, for the petitioner-appellant.

Frank M. Travieso, Assistant United States Attorney, Los Angeles, California, for the respondent-appellee.

**OPINION**

TROTT, Circuit Judge:

**OVERVIEW**

Hugo Rangel Resendiz appeals the district court's dismissal of two petitions for habeas corpus — one under 28 U.S.C. § 2254, naming the State of California as the respondent, and a second under 28 U.S.C. § 2241 against the Bureau of Immigration and Naturalization Service ("INS").[1] We have jurisdiction pursuant to 28 U.S.C. § 2253.

We conclude that (1) Resendiz was not "in custody pursuant to the judgment of a State court" when he filed his § 2254 petition, and he is not entitled to an exception from the in custody requirement; (2) the district court did not err in construing Resendiz's § 2254 petition as a petition against the INS under § 2241 rather than as one for a writ of coram nobis; and

---

[1]On March 1, 2003, the detention and removal duties of the INS were transferred to the newly-formed Bureau of Immigration and Customs Enforcement. 116 Stat. 2135, Pub. L. 107-296 § 441 (2002). Because the INS was the operative agency at the time of the events in this case, we refer to the relevant agency as "the INS" for ease of reference.

(3) the enactments of the Antiterrorism and Effective Death Penalty Act (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) do not change the long standing principle that a petitioner may not collaterally attack his state court conviction in a § 2241 petition against the INS. Accordingly, we affirm.

## BACKGROUND

Resendiz was a lawful permanent resident when he pled guilty to narcotics offenses in the Orange County Superior Court on June 30, 1997. *In re Resendiz*, 25 Cal. 4th 230, 235 (2001). Resendiz claims that before entering his plea, he expressed concern to his attorney, Leonard Basinger, about losing his green card as a result of the offense. Basinger inaccurately informed Resendiz that the guilty plea would not adversely affect his immigration status. The state court judge informed Resendiz and five other defendants that their convictions could result in deportation, but Resendiz nevertheless took Basinger's erroneous advice and pled guilty. *See id.* at 235-37.

As a result of his plea, the state trial court sentenced Resendiz to 180 days imprisonment and three years probation, with credit for time served. In addition, California Health and Safety Code section 11590 required Resendiz to register as a narcotics offender for a period of five years subsequent to the completion of his three year probation term.

While Resendiz was serving his state sentence, the INS served him with a Notice to Appear, which declared that he was a removable alien due to his conviction for a narcotics offense, which qualified as an aggravated felony under 8 U.S.C. § 1227 (a)(2)(B)(i) and (a)(2)(A)(iii). Consequently, on a date not clear from the record, Resendiz was transferred to INS custody at the completion of his 180 days in state custody. *Id.* at 236.

While in INS custody and represented by new counsel, Resendiz began pursuing state court relief on the grounds that Basinger provided ineffective assistance of counsel in violation of the Sixth Amendment by telling Resendiz that his guilty plea would not affect his immigration status. *Id.* Resendiz's state remedies remained unexhausted until April 2, 2001, when the California Supreme Court issued its decision. *Id.* The state court concluded that even assuming Basinger's performance was constitutionally deficient, Resendiz failed to show prejudice because he failed to show that he would have proceeded to trial absent the erroneous advice. *Id.* at 252-54. By the time the state court issued its final decision, Resendiz's state sentence of 180 days and 3 years probation, imposed in 1997, had long since expired.

Nevertheless, Resendiz filed a § 2254 habeas petition in the district court in February of 2002, naming the State as respondent. The district court dismissed the petition because Resendiz was no longer "in custody pursuant to the judgment of a State court." Because Resendiz was in INS custody, however, the court construed the petition as a § 2241 petition and granted Resendiz leave to amend to allow him to name the Director of the INS as the proper respondent. Resendiz objected to the construction of his petition as a § 2241 petition, arguing that the State was the proper respondent. After objecting, Resendiz amended the petition, naming the INS as the respondent, but he continued to assert that the ineffective assistance of counsel during the state proceedings provided grounds for relief.

Sympathizing with Resendiz's unfortunate procedural situation, the district court nonetheless concluded that it lacked jurisdiction over the § 2241 petition and reaffirmed its earlier decision to dismiss the § 2254 petition. The court determined that, pursuant to our decision in *Contreras v. Schiltgen*, 122 F.3d 30 (9th Cir. 1997), *aff'd on add'l grounds* in *Contreras v. Schiltgen*, 151 F.3d 906 (9th Cir. 1998) (*Contreras II*), the state conviction could not be collaterally attacked in a § 2241

petition against the INS, and that Resendiz's petition thus provided no grounds for relief. Moreover, the district court concluded that because Resendiz was no longer in custody pursuant to the state court judgment, it lacked jurisdiction over the § 2254 petition that otherwise would have been available to attack the state conviction. Thus, Resendiz was without federal review.

We granted a certificate of appealability on two issues: (1) whether Resendiz's pending deportation on the grounds of his state conviction can be construed as "custody pursuant to the judgment of a State court," and (2) whether the district court erred in construing Resendiz's § 2254 petition as a proceeding against the INS under § 2241. Resendiz briefed additional, related issues here and requests that we broaden the certificate of appealability. We address each of his contentions in turn.

## DISCUSSION

### A. Standard of Review

We review the district court's dismissal of a petition for a writ of habeas corpus de novo. *Hunt v. Pliler*, 384 F.3d 1118, 1123 (9th Cir. 2004).

### B. Analysis

Resendiz makes five arguments in his attempt to secure elusive federal review: (1) that he satisfies § 2254's "in custody pursuant to the judgment of a state court" requirement because his transfer to INS custody, after serving a state sentence for a drug trafficking crime, was the direct and mandatory consequence of the state court judgment; (2) that California's mandatory narcotics offender registration law satisfies the "in custody" requirement of § 2254; (3) that he is entitled to an exception from the "in custody" requirement of § 2254; (4) that the district court erred in construing the § 2254 petition as a petition against the INS under § 2241 and

should have construed it as a petition for a writ of coram nobis; and (5) that we should revisit the holding of *Contreras* and conclude that the state court conviction may be collaterally attacked through his § 2241 petition.

## 1. Custody Requirement of § 2254

**[1]** Pursuant to 28 U.S.C. § 2254(a), "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person *in custody pursuant to the judgment of a State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (emphasis added). This "in custody" requirement has been interpreted to mean that federal courts lack jurisdiction over habeas corpus petitions unless the petitioner is "under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (per curiam).

**[2]** It is well-established that "once the sentence imposed for a conviction has completely expired, the collateral consequences of the conviction are *not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it*." *Id.* at 492 (emphasis added); *Feldman v. Perrill*, 902 F.2d 1445 (9th Cir. 1990) (interpreting *Maleng* and concluding that under *Maleng*, even when collateral consequences significantly harm habeas petitioners, the harm is not the relevant "in custody" inquiry). Immigration consequences, such as deportation, have long been viewed as "collateral," and thus are not themselves sufficient to render an individual "in custody." *See Fruchtman v. Kenton*, 531 F.2d 946, 949 (9th Cir. 1976) (holding that immigration consequences — deportation — of a criminal conviction are collateral consequences because "the consequence in issue 'was not the sentence of the court which accepted the plea but of another agency over which the trial judge has no control and for which he has no responsibility' " (citation omitted)). While *Maleng* noted that collateral consequences could prevent a

petition — filed while the petitioner was in state custody — from becoming moot after a petitioner is released from custody, *Maleng* foreclosed any argument that collateral consequences could satisfy the in custody requirement for a petition filed after the expiration of the state sentence. *See* 490 U.S. at 492.

Recognizing that collateral consequences are insufficient, Resendiz argues that immigration consequences can no longer be considered collateral. He points out that the AEDPA and IIRIRA eliminated the small amount of discretion in the Executive and Judicial Branches when dealing with individuals convicted of the offenses for which Resendiz was convicted. This change, he contends, renders immigration consequences "direct and mandatory" rather than "collateral." Thus, he contends that the immigration consequences should now be considered sufficient to render him "in custody pursuant to the judgment of a State court."

**[3]** Contrary to Resendiz's assertion, immigration consequences of a state conviction continue to be collateral. As originally stated in *Fruchtman*, these consequences arise from the action of an independent agency — indeed, in the case of a state conviction, an independent *sovereign* — and are consequences over which the state trial judge has no control whatsoever. *See United States v. Amador-Leal*, 276 F.3d 511, 515-16 (9th Cir. 2002) (holding that *Fruchtman* remains good law post-AEDPA and post-IIRIRA).

We explained in *Amador-Leal*: "whether an alien will be removed is still [after AEDPA and IIRIRA] up to the INS. There is a process to go through, and *it is wholly independent of the court imposing the sentence . . . . Removal is not part of the sentence.*" *Id.* at 516 (emphasis added). Extending that holding, we have similarly concluded that, because immigration consequences remain collateral, the failure of counsel to advise his client of the potential immigration consequences of a conviction does not violate the Sixth Amendment right to

effective assistance of counsel. *United States v. Fry*, 322 F.3d 1198, 1200-01 (9th Cir. 2003).

Resendiz claims that *Amador-Leal* and *Fry* are inapposite because the conclusion that immigration consequences remain collateral post-AEDPA and post-IIRIRA was not made in the context of an "in custody" determination. This is a distinction without a difference, and we see no reason why the rationale of *Amador-Leal* and *Fry* does not apply with equal force here. Nothing about an "in custody" determination would change the rationale of those cases, namely that the immigration consequences are the result of an independent agency, not part of the state sentence.

The Tenth Circuit's decision in a factually similar case, *Broomes v. Ashcroft*, 358 F.3d 1251 (10th Cir. 2004), bolsters our conclusion. Like Resendiz, the petitioner in *Broomes*, Asfaw Abtew, claimed that his trial counsel in a state court proceeding failed to inform him of the immigration consequences of a guilty plea. *Id.* at 1253. Relying on a number of cases, including *Maleng* and our prior decision in *Contreras*, the Tenth Circuit held that Abtew was not "in custody pursuant to the judgment of a State court" because, like Resendiz, Abtew's state sentence had fully expired. *Id.* at 1255-56. Furthermore, with respect to a second petitioner in that case, the Tenth Circuit concluded, as we did in *Amador-Leal* and *Fry*, that the AEDPA and IIRIRA "did not alter the collateral nature of deportation to a criminal proceeding." *Id.* at 1256.

Finally, Resendiz contends that *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874 (2d Cir. 1996), supports his position. *Poodry* is inapplicable. In *Poodry*, the Second Circuit applied ordinary habeas corpus principles and concluded that an Indian tribe member who had been sentenced by the tribe to permanent tribal banishment was "in custody." *Id.* at 893-95. The court held that the threat of banishment by the tribe was a severe restraint on liberty, and thus, federal habeas corpus review was appropriate. *Id.*

The holding in *Poodry* is not at all remarkable, nor does it help Resendiz. The *Poodry* court examined the act of a single sovereign (the tribe), and determined that the severe restraint imposed by the threat of banishment was enough to put the petitioner in custody pursuant to that sovereign's judgment. The holding mirrors the principle that an alien subject to an order of deportation by the INS may seek habeas relief under § 2241 alleging unlawful detention by the INS, because that order is a severe restraint on his liberty. *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 308-14 (2001) (holding that jurisdiction to challenge an order of deportation remains under § 2241 post-AEDPA and post-IIRIRA).

**[4]** The material difference between cases such as *Poodry* and *St. Cyr* and Resendiz's case is that, severe consequences notwithstanding, two independent agencies (indeed, sovereigns) are operating here. The state's action is entirely independent of the INS's action initiating deportation proceedings, and the state has nothing to do with deportation. Thus, while Resendiz is indeed threatened with banishment, it is not a threat imposed by the state court, and there is nothing unlawful about the INS detention.

**[5]** Consequently, we must reject Resendiz's argument that the immigration consequences of his state conviction render him "in custody pursuant to the judgment of a State court" for purposes of § 2254.

## 2. *Narcotics Offender Registration*

Resendiz contends that the requirement that he register for five years as a narcotics offender renders him "in custody" pursuant to the state court judgment for purposes of § 2254 because (1) the restriction is one not shared by the public generally, and (2) it is a punishment. *See Williamson*, 151 F.3d at 1182 (citing *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)) (explaining that whether a petitioner is "in custody"

depends on whether he is subject to a restraint "not shared by the public generally"). His contentions fail.

California Health and Safety Code section 11590 provides in relevant part that:

> any person who is convicted in the State of California of [one of several enumerated narcotics offenses] . . . shall within 30 days of his or her coming into any county or city, or city and county in which he or she resides or is temporarily domiciled for that length of time, register with the chief of police of the city in which he or she resides or the sheriff of the county if he or she resides in an unincorporated area.

The "registration" requires that the person give

> a statement in writing signed by such person, giving such information as may be required by the Department of Justice, and . . . the fingerprints and photograph of such person. . . . If any person required to register hereunder changes his residence address he shall inform, in writing within 10 days, the law enforcement agency with whom he last registered of his new address.

Cal. Health & Safety Code § 11594.

Initially, to the extent that he relies on the punitive nature of the statute as a reason to satisfy the custody requirement, Resendiz's claim that this statute is punitive in nature is wrong. The California case he cites for that proposition, *People v. Villela*, 30 Cal. App. 4th 54, 60 (1994), applied the analysis outlined by *In re Reed*, 33 Cal. 3d 914 (1983), and did indeed conclude that the narcotics registration statute was punitive in nature. However, the California Supreme Court disapproved of the *Reed* analysis in *People v. Catellanos*, 21 Cal. 4th 785, 797-99 (1999), shattering *Villela*'s conclusion

that the narcotics registration law is punitive. *In re Luisa Z.*, 78 Cal. App. 4th 978 (2000), on the other hand, remains good law, and concluded that the narcotics registration statute at issue is *not* punitive in nature. *Id.* at 983.

**[6]** Resendiz's argument that the registration requirement renders him in custody because it is a restriction not shared generally by the public also fails. We have held previously that several states' sexual offender registration laws do not render a habeas petitioner "in custody" because they are a collateral consequence of conviction that do not impose a severe restraint on an individual's liberty. *See Henry v. Lungren*, 164 F.3d 1240, 1242 (9th Cir. 1999) (holding that California sexual offender registration laws do not render registrant "in custody"); *McNab v. Kok*, 170 F.3d 1246 (9th Cir. 1999) (holding the same with respect to Oregon sexual offender laws); *Williamson v. Gregoire*, 151 F.3d 1180, 1182-84 (9th Cir. 1998) (holding the same with respect to Washington sexual offender laws).

There is no material difference between such laws and the narcotics offender law at issue here to command a different result. Indeed, the narcotics offender laws create far less restraint than do the sexual offender registration laws. While the sexual offenders in the cases cited above are required to report within twenty-four hours of moving, a narcotics offender under section 11590 has thirty days before he must comply with the registration requirement. Similarly, sex offenders are required to register for life whereas a narcotics offender must report for only five years. Finally, the failure to register as a narcotics offender may result in a misdemeanor while a sex offender's failure to register may result in either a felony or misdemeanor conviction. *Compare* Cal. Health & Safety Code § 11594 *with* Cal. Penal Code § 290.

**[7]** Given that these sexual offender registration laws do not render an individual "in custody," despite their stringent

requirements, we see no reason to treat the far less restrictive narcotics offender registration laws any differently.

### 3. Exceptions to In Custody Requirement

**[8]** The Supreme Court has identified two possible exceptions to the "in custody" requirement, neither of which apply here. The first is a *Gideon*[2] violation, or a complete failure of counsel. *Custis v. United States*, 511 U.S. 485, 494-96 (1994). That exception is concededly not present here. The second, which Resendiz asserts, is a possible "rare" exception, not yet defined, where "no channel of review was actually available to a defendant with respect to a prior conviction." *Daniels v. United States*, 532 U.S. 374, 383 (2001); *see also Johnson v. United States*, 544 U.S. \_\_\_, slip op. at 7 and n.4 (2005) (stating that the Court has recognized "only one exception," the *Gideon* exception, to the general prohibition on collateral attacks and declining to explore the possible "rare" second exception).

**[9]** To the extent that this rare exception may exist, the Court has suggested that it might be present where "a state court . . . without justification, refuse[s] to rule on a constitutional claim that has been presented to it" or where a defendant "obtain[s] compelling evidence that he is actually innocent." *Lackawanna County Dist. Atty. v. Coss*, 532 U.S. 394, 405 (2001). There has been no suggestion that an exception exists where, as here, channels for review not only existed, but also were pursued. In other words, although Resendiz has no *federal* channel of review, it is quite clear that he has had and availed himself of *several* channels of state review. *See In re Resendiz*, 25 Cal. 4th at 236-38 (canvassing the paths of review Resendiz sought in state court). Thus, Resendiz is not entitled to an exception from the "in custody" requirement.

---

[2]*Gideon v. Wainwright*, 372 U.S. 335 (1963).

## 4.  Writ of Coram Nobis

Resendiz argues that the district court should not have construed his petition as one under § 2241, but instead should have construed it as a writ of coram nobis, even though Resendiz never asked the court to do so. Because Resendiz did not contend below that his petition should be construed as a writ of coram nobis, and because he provides no authority suggesting that the district court might have a duty to sua sponte raise the issue, we decline to address this claim. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992) ("As a general rule, an appellate court will not hear an issue raised for the first time on appeal.").[3]

## 5.  Collateral Attack of State Court Judgment

Finally, Resendiz contends, for the first time, that *Contreras* and *Contreras II* are not controlling post-AEDPA. He urges us to revisit the holding of *Contreras* and conclude that in a § 2241 petition, a petitioner may collaterally attack the state court conviction that forms the basis for INS custody. Resendiz recognizes that a three-judge panel ordinarily may not overturn a prior Ninth Circuit decision, but urges us to do so in light of intervening changes in the law, i.e., the AEDPA.

The facts of *Contreras* are indistinguishable from the instant case: the petitioner in *Contreras* pled no contest to a crime that would result in deportation. He later claimed that his counsel provided ineffective assistance, rendering his plea involuntary. However, like Resendiz, Contreras had completed his state sentence by the time his state remedies were exhausted. *Contreras*, 122 F.3d at 31-32.

---

[3]Our recent decision in *United States v. Kwan*, No. 03-50315, 2005 WL 1119652 (9th Cir. May 12, 2005), in which we held that coram nobis relief was available under similar circumstances, does not affect our decision. Unlike Kwan, Resendiz did not petition the district court for the writ of coram nobis, but argued instead that the court should have so construed his habeas petition sua sponte.

**[10]** In *Contreras*, and in this case as well, "[t]he fact of [petitioner's state] conviction is sufficient basis for the INS to detain him." *Id.* at 32. Consequently, in *Contreras*, "there [was] nothing unlawful about the INS' holding Contreras in custody." *Id.* Accordingly, we held that, because the INS had neither the authority nor the competence to inquire into the facts of the conviction, no collateral attack was permissible. *Id.*

**[11]** Nothing in the AEDPA or IIRIRA serves to undermine the holding of *Contreras*. The long-standing prohibition on collateral attack is premised on a need for finality. *See, e.g.*, *Lackawanna*, 532 U.S. at 403 (explaining the reasons why collateral attack is prohibited: preserving the integrity of the judgment and ease of administration). The Supreme Court recently reaffirmed this principle in *Johnson*, 544 U.S. ___, slip op. at 7. Indeed, the Court concluded that the AEDPA's principal purposes — a need for finality — would be thwarted "by maximizing the time that judgments are open to question." *Id.* at slip op. 11.

**[12]** Given this principle inherent in the AEDPA, courts continue to cite *Contreras* with approval, apply the cases upon which *Contreras* relied, and reach the same conclusion in the post-AEDPA context. *See Broomes*, 358 F.3d at 1255 (concluding, in a post-AEDPA petition, that petitioner could not collaterally attack his state court conviction in a § 2241 petition against the INS); *Drakes v. INS*, 330 F.3d 600, 605 (3rd Cir. 2003) (applying *Daniels* and *Lackawanna* and concluding that a post-AEDPA § 2241 petition could not collaterally attack an underlying state conviction). Accordingly, we adhere to the holding of *Contreras* and affirm the district court's conclusion that Resendiz may not collaterally attack his state conviction in a habeas petition against the INS under § 2241.

## CONCLUSION

For the reasons discussed, we conclude that (1) Resendiz was not "in custody pursuant to the judgment of a State court"

for purposes of 28 U.S.C. § 2254; (2) that he is not entitled to an exception from this requirement; and (3) that the district court did not err in construing Resendiz's petition as one arising under 28 U.S.C. § 2241. Finally, we reaffirm post-AEDPA the holding of *Contreras* and *Contreras II*.

**AFFIRMED.**