WYNN, Circuit Judge,
dissenting:
Wilson has alleged compelling claims that significant legal burdens and disabilities imposed on him are wholly unjustified by any legitimate governmental interest; morally and legally, he is clearly entitled ... to a judicial forum to test the accuracy of his claims.[1]
Petitioner Eric Wilson was convicted in 1999 in Virginia following an investigation and trial that have subsequently been shown to be rife with gross police misconduct; indeed, as conceded by the majority opinion, Wilson has a “compelling claim of actual innocence” of the crimes for which he has fully served the sentence imposed. Notwithstanding that fact, and based solely on what now seems almost certainly to *341 be a wrongful underlying conviction, Wilson remains subject to significant restraints on his liberty. For the duration of his life, depending on the state and jurisdiction in which he lives, Wilson will be required to regularly report in-person to the police and prevented from being present in any location generally frequented by children — even though he is almost certainly innocent of the sex offenses that would normally require such measures.
The majority opinion today concludes that Wilson, a person with a compelling claim of innocence, has no recourse in federal court to test the accuracy of his claim because the deprivations on liberty incident to sexual offender registration are too trivial and too collateral to satisfy the requirement that a habeas petitioner be in custody. But it is well settled that the writ of habeas corpus, with “its grand purpose — the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty,” Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), is not so narrow, static, or formalistic as to permit the violation of our Constitution by allowing an innocent person to endure severe deprivations of liberty imposed by the government. Because I find that our Constitution, prior jurisprudence, and habeas statutes should not be read to compel such an unjust result, I must respectfully dissent.
I.
A.
The majority opinion concedes that Wilson’s claims of actual innocence, prosecutorial misconduct, and police corruption amount to “a serious constitutional challenge to his conviction.” Ante at 333. Nonetheless, relying on Maleng v. Cook, 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (per curiam), the majority opinion denies Wilson the right to proceed on a writ of habeas corpus because “the Supreme Court [has] never held that a defendant is in custody for habeas purposes when the sentence imposed for the conviction has fully expired at the time his petition is filed, [and] no court of appeals has so held either.”[2] Ante at 337. Yet that observation does not compel the result the majority opinion reaches because a pertinent line of precedents issued after Maleng recognizes an exception for a petitioner with compelling evidence of actual innocence and no available forums for redress.
In Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001), the Supreme Court considered whether an individual may use a writ of habeas corpus to challenge an enhanced federal sentence on the ground that his prior convictions were unconstitutionally obtained. Id. at 376, 121 S.Ct. 1578. Although the Supreme Court held that “as a general rule” the petitioner could not chal *342 lenge these fully expired prior convictions,[3] the Supreme Court acknowledged that “[t]here may be rare circumstances in which [habeas relief] would be available, but we need not address the issue here.” Id. The Supreme Court further expressed its concerns as follows:
We recognize that there may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own. The circumstances of this case do not require us to determine whether a defendant could use a motion under § 2255 to challenge a federal sentence based on such a conviction. Cf., e.g., 28 U.S.C. § 2255 (1994 ed., Supp. V) (allowing a second or successive § 2255 motion if there is “newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact-finder would have found the movant guilty of the offense”); ibid, (tolling 1-year limitation period while movant is prevented from making a § 2255 motion by an “impediment ... created by governmental action in violation of the Constitution or laws of the United States”).
Id. at 383-84, 121 S.Ct. 1578.
On the same day that the Supreme Court issued Daniels, the Supreme Court also issued its decision in Lackawanna County Dist. Att’y v. Coss, 532 U.S. 394, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001). In Coss, the Supreme Court considered “whether federal [habeas] postconviction relief is available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody.” Id. at 396, 121 S.Ct. 1567. As such, the Supreme Court in Coss addressed “the question we explicitly left unanswered in Maleng: ‘the extent to which the [prior expired] conviction itself may be subject to challenge in the attack upon the [current] sentence] which it was used to enhance.’ ” Id. at 402, 121 S.Ct. 1567 (quoting Maleng, 490 U.S. at 494, 109 S.Ct. 1923) (alterations in original). As in Daniels, the Supreme Court in Coss held:
[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.
Id. at 403-04, 121 S.Ct. 1567 (emphasis added) (internal citation omitted). However, the Supreme Court again recognized *343 that certain exceptions to this general rule exist, specifically for compelling claims of actual innocence coupled with an absence of available forum for redress:
We stated in Daniels that another exception to the general rule precluding habeas relief might be available, although the circumstances of that case did not require us to resolve the issue. We note a similar situation here.
The general rule we have adopted here and in Daniels reflects the notion that a defendant properly bears the consequences of either forgoing otherwise available review of a conviction or failing to successfully demonstrate constitutional error. It is not always the case, however, that a defendant can be faulted for failing to obtain timely review of a constitutional claim. For example, .... after the time for direct or collateral review has expired, a defendant may obtain compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner.... In such situations, a habeas petition directed at the enhanced sentence may effectively be the first and only forum available for review of the prior conviction. As in Daniels, this case does not require us to determine whether, or under what precise circumstances, a petitioner might be able to use a § 2254 petition in this manner.
Id. at 405-06, 121 S.Ct. 1567 (internal citations omitted).
Thus, the Supreme Court’s opinions in Coss and Daniels strongly suggest that there are instances in which a fully served sentence may be collaterally challenged through a writ of habeas corpus. Furthermore, the Supreme Court’s decision to explicitly note that exceptions should be available in cases of actual innocence demonstrates a serious underlying concern that the Coss and Daniels opinions would be misconstrued to elevate procedural requirements over more fundamental, substantive concerns.
The majority opinion makes much of the fact that “the Supreme Court has never suggested that jurisdictional barriers should be ignored based on the merits of the claim.” Ante at 337 n. 1. But the requirement that the petitioner be in “custody” is not the sole jurisdictional barrier to considering a habeas petition. A petitioner seeking relief under § 2254 must be not only “in custody,” but in custody “pursuant to the judgment of a State court.” 28 U.S.C. § 2254(a) (emphasis added). Similarly, § 2255, which applies to federal prisoners seeking habeas relief, requires that a petitioner in federal custody must attack the federal judgment under which he is in custody. 28 U.S.C. § 2255(a). Thus, under the habeas statutes, a petitioner is required, as a jurisdictional matter, to be in custody under the specific court judgment the petitioner seeks to attack via habeas.
In Daniels, however, the petitioner was in federal custody, but his motion to vacate challenged his prior robbery convictions, which were obtained in state court. 532 U.S. at 377, 121 S.Ct. 1578. As already discussed, although the Supreme Court denied the petitioner’s habeas petition on other grounds, the Supreme Court allowed that such a petition could be brought in certain circumstances. 532 U.S. at 383-84, 121 S.Ct. 1578. The circumstances identified by the Supreme Court in Daniels— “newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense,” 532 U.S. at 384, 121 S.Ct. 1578 — are precisely the circumstances present in the instant case.
*344 Moreover, the lower court proceedings in Maleng reveal that the petitioner was in federal custody and yet filed a motion under § 2254 challenging a previous state conviction used to enhance a later state conviction, the sentence for which the petitioner had not yet begun to serve. Cook v. Maleng, 847 F.2d 616, 617 (9th Cir.1988), aff'd 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989). The Supreme Court nevertheless held that the petitioner was “in custody” under the pending state sentences “even though he [was] not presently serving them,” because the Supreme Court interpreted the detainer placed on the petitioner by the state of Washington as satisfying the jurisdictional “custody” requirement. Maleng, 490 U.S. at 493, 109 S.Ct. 1923.
Through these rulings, the Supreme Court has certainly not ignored the jurisdictional requirements of § 2254 and § 2255 in Maleng and Daniels. Rather, the Supreme Court has “very liberally construed the ‘in custody’ requirement for purposes of federal habeas,” although it has “never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction.” Maleng, 490 U.S. at 492, 109 S.Ct. 1923. This case likewise requires no such extension, as the panel agrees that the sexual offender registration requirements do unjustifiably restrain Wilson.
Indeed, the Supreme Court has consistently affirmed the indispensable precept that “ ‘the principles of comity and finality informing’ ” procedural restrictions on habeas proceedings “ ‘must yield to the imperative of correcting a fundamentally unjust’ ” scheme of punishment. Schlup v. Delo, 513 U.S. 298, 320-21, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting Murray v. Carrier, 477 U.S. 478, 495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Accordingly, the writ “must retain the ‘ability to cut through barriers of form and procedural mazes’.... ‘to insure that miscarriages of justice within its reach are surfaced and corrected.’ ” Hensley v. Mun. Court, 411 U.S. 345, 350, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (quoting Harris v. Nelson, 394 U.S. 286, 291, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)) (citations omitted). The Supreme Court has “rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements,” id,., and such constructions would be particularly inappropriate in the context of compelling cases of actual innocence.
Consequently, although generally a petitioner who has completely served a sentence for a particular offense is precluded from challenging that fully expired conviction through a writ of habeas corpus, the majority opinion overstates this rule. The Supreme Court recognized in Coss that, when a defendant “obtain[s] compelling evidence that he is actually innocent of the crime for which he was convicted,” a defendant may proceed on a writ of habeas corpus to collaterally attack a prior conviction for which the defendant had already served the sentence. 532 U.S. at 405, 121 S.Ct. 1567. Importantly, in these situations, the Supreme Court explained that a habeas petition in federal court “may effectively be the first and only forum available for review of the prior conviction.” Id. at 406, 121 S.Ct. 1567. In these situations, federal habeas proceedings are the appropriate means of “providing ... a meaningful avenue by which to avoid a manifest injustice.” Schlup, 513 U.S. at 327, 115 S.Ct. 851.
Here, Wilson presents a compelling case for his actual innocence and appears to have no recourse available to him at this *345 stage in Virginia.[4] In my view, the general rule articulated and refined by the Supreme Court in Maleng, Daniels, and Coss precluding a petitioner from challenging a fully expired prior conviction does not preclude Wilson from challenging his Virginia conviction. Instead, “the goals of easy administration and finality” underlying the Supreme Court’s general rule, see Daniels, 532 U.S. at 383, 121 S.Ct. 1578; Coss, 532 U.S. at 403-04, 121 S.Ct. 1567, must give way in this case because Wilson “can [not] be faulted for failing to obtain timely review of [his] constitutional claim[s]” under circumstances where “after the time for direct or collateral review has expired, [Wilson] obtain[ed] compelling evidence that he is actually innocent of the crime for which he was convicted.” Coss, 532 U.S. at 405, 121 S.Ct. 1567. As the Supreme Court explained in Coss, “[i]n such situations, a habeas petition ... may effectively be the first and only forum available for review of the prior conviction.” Id. at 406, 121 S.Ct. 1567. Although the relevant facts in Daniels and Coss did “not require [the Supreme Court] to determine whether, or under what precise circumstances, a petitioner might be able to use a § 2254 petition in this manner,” id., Wilson’s case does necessitate such a determination, in the interests of fairness and to avoid manifest injustice. Because § 2254’s “custody” requirement should be “liberally construed” in Wilson’s case- — a case that combines undisputed deprivations on Wilson’s liberty, compelling claims of his actual innocence, and an absence of forum to redress Wilson’s constitutional challenges— in my view, the formalist concerns of the majority opinion should yield to the correction of fundamentally unjust punishments.
B.
I take further issue with the majority opinion’s contention that the deprivations on liberty incident to Wilson’s sexual offender registration requirements are too trivial and too collateral to satisfy the requirement that a habeas petitioner be in custody. This question is yet to be addressed in the Fourth Circuit, and, in my view, the majority opinion has erroneously relied on non-binding cases from our sister circuits that considered state sex offender registration requirements materially distinguishable from the registration requirements imposed on Wilson in Virginia and Texas.
The Supreme Court has long made it “clear that the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody.” Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 300, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) (quotation omitted); see also Jones, 371 U.S. at 240, 83 S.Ct. 373 (“History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a *346 [person’s] liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.”).
In Jones, for example, the Supreme Court held that a parolee continues to be in custody for habeas purposes because parole “imposes conditions which significantly confine and restrain [a person’s] freedom.” Id. at 243, 83 S.Ct. 373. In subsequent cases, the Supreme Court extended this holding to petitioners released after conviction on their own recognizance, Hensley, 411 U.S. at 351-52, 93 S.Ct. 1571, as well as on bail, Lefkowitz v. Newsome, 420 U.S. 283, 291 n. 8, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975). The Supreme Court explained that the writ of habeas corpus “is not now and never has been a static, narrow, formalistic remedy; [but that] its scope has grown to achieve its grand purpose — the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty.” Jones, 371 U.S. at 243, 83 S.Ct. 373.
Our sister circuits apply Jones and analyze the satisfaction of the custody requirement by looking to the severity of restraints upon personal liberty. Compare Lillios v. New Hampshire, 788 F.2d 60, 61 (1st Cir.1986) (per curiam) (“[F]ines and [driver’s license] suspensions ... are not the sort of severe restraint on individual liberty for which habeas corpus relief is reserved.” (quotation marks omitted)); with Dow v. Circuit Court of First Circuit, 995 F.2d 922, 923 (9th Cir.1993) (per curiam) (custody requirement satisfied when petitioner sentenced to 14 hours of attendance at alcohol rehabilitation program).
In Dow, the Ninth Circuit held that a petitioner was in custody by virtue of a sentence requiring only “fourteen hours of attendance at an alcohol rehabilitation program ... [which] could be scheduled [anytime] over [ ] a three-day or five-day period.” Id. at 922-23. The court reasoned that: “[t]he sentence in this case, requiring [petitioner’s] physical presence at a particular place, significantly restrains [petitioner’s] liberty to do those things which free persons in the United States are entitled to do and therefore must be characterized, for jurisdictional purposes, as ‘custody.’ ” Id. at 923.
Here, Wilson is subject to a litany of in-person reporting requirements in both Virginia and Texas that demand his presence at a particular place and particular time, and such obligations will extend the duration of Wilson’s natural life.[5] In Virginia, Wilson is required to reregister in person with Virginia police: if he moves to a new residence, Va.Code Ann. § 9.1-903(d); following any change of his place of employment, id. § 9.1-903(e); following any change of ownership information to a motor vehicle, watercraft and aircraft, id. § 9.1 — 903(f); and following any change in his enrollment or employment status with an institution of higher learning, id. § 9.1-906(a).[6]
Likewise, in Texas, Wilson is required to report in person to the Texas police: once each year to verify his registration information, Tex.Code Crim. Proc. Ann. art. 62.058(a); within seven days before and *347 after any change of address, id. at 62.060, 62.051(a); and on an annual basis to renew his driver’s license, id. at 62.060. Wilson is also required to comply with any request from Texas authorities for a DNA specimen. Id. at 62.061.[7]
Notwithstanding the severe restraints on Wilson’s liberty occasioned by these sex offender registration requirements, the majority opinion states that “every court of appeals to have considered whether the registration requirements imposed on sex offenders place the sex offender in custody for purposes of habeas jurisdiction has concluded that they do not.” Ante at 337. Based on this assertion, the majority opinion concludes that it “will not depart from this unanimous body of law.” Id. However, the four circuit court opinions comprising this so-called “unanimous body of law” include three cases that are materially distinguishable from the present case, and one case that, in my view, was wrongly decided.
In Williamson v. Gregoire, 151 F.3d 1180 (9th Cir.1998), the Ninth Circuit, the first federal court of appeals to address the issue, concluded that Washington’s sex offender registration statute did not render a defendant “in custody” for the purposes of 28 U.S.C. § 2254 because:
The Washington sex offender law does not require Williamson even to personally appear at a sheriffs office to register; registration can be accomplished by mail. Thus, the law neither targets Williamson’s movement in order to impose special requirements, nor does it demand his physical presence at any time or place.
Id. at 1184.
In Leslie v. Randle, 296 F.3d 518 (6th Cir.2002), the Sixth Circuit relied heavily on the Ninth Circuit’s reasoning in Williamson in holding that Ohio’s sex offender registration statute did not render a petitioner “in custody” for habeas purposes:
The Ninth Circuit has noted that the federal court “precedents that have found a restraint on liberty rely heavily on the notion of a physical sense of liberty — that is, whether the legal disability in question somehow limits the putative habeas petitioner’s movement.” Williamson, 151 F.3d at 1183.... The Ohio sexual-predator statute places no such constraints on Leslie’s movement. Like the Washington sexual-predator statute discussed in Williamson, the Ohio statute applies to Leslie “whether he stays in the same place or whether he moves,” Williamson, 151 F.3d at 1184.
Id. at 522.
Likewise, in Virsnieks v. Smith, 521 F.3d 707 (7th Cir.2008), the Seventh Circuit considered a “Wisconsin sexual offender registration statute ... [that] d[id] not impose any significant restriction on a registrant’s freedom of movement” because “registrants may [register and reregister] by mail” and “registrant[s] may update the [Department] with any changes by using a telephonic registration system.” Id. at 719-20. The Seventh Circuit concluded, based on the lack of an in-person reporting requirement, that “the Wisconsin statute imposes minimal restrictions on a registrant’s physical liberty of movement.” Id. at 720.
The restraints on liberty suffered by Wilson under the Virginia and Texas sex offender registration statutes are materially different than the restraints enforced by *348 mail considered by our sister circuits in Williamson, Leslie, and Virsnieks. Consequently, rather than refusing to depart from a “unanimous” body of law, the majority opinion has instead decided to follow the non-binding authority issued by a single panel of the Ninth Circuit in Henry v. Lungren, 164 F.3d 1240 (9th Cir.1999). In Henry, without analysis, the Ninth Circuit concluded that “Registration, even if it must be done in person at the police station, does not constitute the type of severe, immediate restraint on physical liberty necessary to render a petitioner ‘in custody’ for the purposes of federal habeas corpus relief.” 164 F.3d at 1242.
I question the majority opinion’s decision to follow the Ninth Circuit’s decade-old summary decision in Henry. Uncontestably, the in-person reporting requirements applicable to Wilson in Virginia and Texas “significantly restrain [Wilson’s] liberty to do those things which in this country free [people] are entitled to do,” and, consequently, the majority opinion should squarely address the question of whether, in the Fourth Circuit, “[s]uch restraints are enough to invoke the help of the Great Writ.”[8] Jones, 371 U.S. at 243, 83 S.Ct. 373.
II.
Our hands are not tied here; no precedent forecloses the relief sought in this case. Rather than blindly adhering to formalist procedural concerns, we should instead be guided by the. equitable principles that traditionally govern the law of habeas corpus, Munaf v. Geren, 553 U.S. 674, 676, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008), and by the Supreme Court’s mandate to construe the “custody” requirement liberally, particularly in cases involving deprivations on liberty, credible claims of actual innocence, and an absence of forum for redress.
I am deeply troubled that our legal system would be construed to prevent a person with compelling evidence of his actual innocence and wrongful conviction from *349 accessing a forum in which to clear his name, while, at the same time, restrain the liberty of such a person under a regime created to surveil society’s most disdained criminal offenders. That Wilson’s completion of an arguably undeserved sentence is the condition that the majority opinion contends serves to seal off the courts is especially egregious. It is in effect an additional punishment that the majority opinion inflicts upon Wilson.
Because I believe the law does not compel the result reached by the majority opinion today, and that this Court has the authority — indeed, the moral imperative— to grant Wilson the hearing that he seeks, I respectfully dissent.

. Ante at 340-41 (Davis, J., concurring).

. Despite the majority opinion's contention to the contrary, a court of appeals — specifically, the Ninth Circuit — has held that a defendant is in custody for habeas purposes even when the sentence imposed for the original conviction has fully expired at the time his petition is filed. Zichko v. Idaho, 247 F.3d 1015 (9th Cir.2001). It is true, as the majority opinion notes, ante at 337, n. 2, that the petitioner in Zichko was incarcerated for failure to register as a sex offender at the time he filed his petition. But this does not change the fact that the Ninth Circuit allowed the defendant to use a habeas petition to collaterally "challeng[e] an earlier, expired rape conviction.” Zichko, 247 F.3d at 1019. The clear implication of the majority opinion’s attempt to distinguish Zichko leads to the untenable conclusion that Wilson could meet the custody requirements for filing his § 2254 petition by intentionally violating his sex offender registration requirements and causing his own arrest.

. Notably, the Supreme Court's holding in Daniels was not based on a determination that the petitioner had failed to satisfy the custody requirement of § 2255 or that the habeas statute was insufficiently robust to allow for a collateral attack of an expired sentence through a challenge to an enhanced sentence. See 532 U.S. at 383, 121 S.Ct. 1578 ("To be sure, the text of § 2255 is broad enough to cover a claim that an enhanced federal sentence violates due process.”). Instead, the Supreme Court's holding in Daniels rested on the “the goals of easy administration and finality,” which alone “justified] foreclosing relief under § 2255.” Id. However, even these grounds were based on an assumption that "[the] prior conviction used to enhance [the] federal sentence is no longer open to direct or collateral attack in its own right because tlte defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), [such] that defendant is without recourse.” Id. at 382, 121 S.Ct. 1578 (emphasis added).

. The majority suggests that Wilson may be able to state a coram nobis claim in Virginia State Court. Ante at 338-40. However, this does not seem likely; Virginia has limited the reach of this writ to the correction of clerical errors. See Va.Code Ann. § 8.01-677; Neighbors v. Commonwealth, 274 Va. 503, 650 S.E.2d 514, 518 (2007) (noting that coram nobis is not available “to serve as a writ of error to bring the original judgment under review” when there is newly discovered evidence); accord Commonwealth v. Morris, 281 Va. 70, 705 S.E.2d 503, 506 (2011) (indicating that the writ is available only in event of “error[s] of fact ... [that] would have prevented rendition of the judgment ” by taking away the court’s power to hand down a particular verdict) (emphasis in original). "[S]uch errors of fact include cases 'where judgment is rendered against a party after his death, or who is an infant.’ " Morris, 705 S.E.2d at 507 (quoting Dobie v. Commonwealth, 96 S.E.2d 747, 753 (explaining that the writ “does not lie to correct any error in the judgment of the court ... ”)).

. Indeed, Wilson will be required to comply with similar, if not more severe, restraints on his liberty in all jurisdictions of the United States. See Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. §§ 16901, et seq.

. Wilson is also required to: submit in person to be photographed by the Virginia police every two years, Va.Code Ann. § 9.1-904(c); and reregister in person or electronically with Virginia police within 30 minutes following any change of his electronic mail address information, any instant message, chat or other Internet communication name or identity information that he uses or intends to use. Id. § 9.1 — 903(f).

. If Wilson were to be homeless for more than seven days, he would be required to report to a supervising legal officer on a weekly basis. See Tex.Code Crim. Proc. Ann. art. 62.051(h).

. In addition to in-person reporting requirements, Wilson is subject to myriad municipal ordinances that restrict the movements of registered sex offenders. See, e.g., Commerce, Tex., Code of Ordinances ch. 66, art. IV, § 66-102(2) (2007) (making it an offense to “be present in any college, school, daycare facility, city park or playground, or any public festival or celebration”); Killeen, Tex., Code of Ordinances ch. 16, art. VIII, § 16-141 (2007) (prohibiting the establishment of residence within 2,000 feet of any premises where children commonly gather); Stephen-ville, Tex., Code of Ordinances tit. XIII, § 130.82 (2007) (making it an offense to loiter within 300 feet of a child safety zone).
Given the Supreme Court's focus on freedom of movement in its analysis of whether a petitioner has established custody for habeas purposes, it may be necessary to consider the individual and cumulative impact of all regulations that restrict Wilson's movements, including municipal regulations, in a proper analysis of custody. In some jurisdictions, such as Iowa, Wilson would be prohibited from walking outside certain sex offender corridors. See Doe v. Miller, 298 F.Supp.2d 844, 851 (S.D.Iowa 2004) (explaining that in Des Moines and Iowa City, “two thousand foot circles [in which sex offenders are prohibited from living] cover virtually the entire city area” with the exception of industrial areas and some of the cities most expensive neighborhoods, and that in smaller towns one "school or child care facility” can leave “the entire town ... engulfed by an excluded area”); cf. Doe v. City of Albuquerque, 667 F.3d 1111 (10th Cir.2012) (sex offenders prohibited from entering any public library); People v. Oberlander, No. 02-354, 20 Misc.3d 1133, 2008 WL 3390455, at *1 (N.Y.Sup. June 18, 2008) (convicted sex offender unable to live within walking distance of a synagogue as required by Orthodox Jewish religious requirements because he is he is forbidden to “live, work or loiter” within 1000 feet of "a public or private, elementary, middle or high school, child care facility, park, playground, public or private youth center, or public swimming pool”).