Christian, J.
delivered the opinion of the court.
The court is of opinion that the Circuit court did not err in declaring by its decree of the 12th day of April 1872 that W. W. Boyd was not responsible as endorser of the negotiable note, made by Andrew L. Boyd for $5,000, payable at the bank of Virginia at Buchanan.
It is admitted that the note was not presented for payment and protested for non-payment on the day of its maturity. Excuse for this is offered by the holder that it could not have been done on the day of maturity because of the presence of the public enemy, which made the removal of the valuable effects of the bank, and among them this note, necessary, and that on the day of maturity the said note had not been returned from the place of safety where it had been secreted with other effects of the bank.
The note under consideration matured on the 18th June 1861. The Federal army under General Hunter, in its march on Lynchburg, reached Buchanan on the 12th June, and left on the 14th. On its retreat from Lynchburg the army did not pass through Buchanan.
They were not present in the town, or near it, at any time after the 14th of June. It is not clearly shown that on the day of maturity of the note it was not protested and due notice of dishonor given in consequence of the presence of the public enemy. It was certainly possible on that day, four days after the enemy left the town, to have made presentment and protest, and given notice of the dishonor of the note.
On the day when this note ought to have been presented and protested Hunter’s army was at Lynch-burg, fifty miles from Buchanan. The cashier was in *636 Buchanan, and had the hooks at the bank. The place where the effects of the bank was secreted were but two miles from the town. It was certainly possible, if not an easy matter, to have gotten possession of this note, and had it presented and protested at the day of maturity.
But conceding that under the circumstances then existing, the bank was guilty of no laches, and that it was indeed impossible to have had presentment, protest and notice of dishonor on the day of the maturity of the note, yet in order to bind the endorser, all this should have been done within a reasonable time after the hindering cause was removed.
It is conceded this was never done; but, on the contrary, it is attempted to show a waiver of protest by the endorser, and also a promise after maturity that he would pay the debt. The evidence fails to establish either fact. And the record does not show any notice of non-payment within a reasonable time. The loose conversations testified to by the cashier, if they can be regarded as notice, are not fixed at such time as would be considered reasonable, after the hindering cause was removed; nor indeed is any time fixed by witness when these conversations occurred.
That there was no waiver of protest is clearly shown; and the only evidence of any recognition of a legal liability to pay the note by Boyd was a proposition to pay his brother’s note in Confederate money, then so greatly depreciated as to be refused by the bank.
The offer to pay in Confederate money was an act of favor to his brother, for he might well be willing to pay for him a few hundred dollars in order to extinguish his debt to the bank, and not be either willing or able to pay five thousand dollars for that purpose. The bank having refused to accept Confederate mo *637 ney, it cannot now treat that offer as a promise to pay five thousand dollars, or in any manner as a reeognition on the part of the board of his liability as ser. The Confederate money being rejected, the matter then stood iust as if Boyd had never said one ^ ¿ word about paying the note.
Although a promise to pay by an endorser, with full knowledge of all the facts, and of the laches of the holder may be held in point of law to amount to waiver of the right to notice, yet this rule must be taken with this qualification; the promise to be obligatory must be deliberately made in clear explicit language, and must amount to an admission of the right of the holder, or of a duty and willingness of the endorser to pay. If therefore the conduct or acts of the endorser be equivocal, or the language used be of a qualified or uncertain nature, the endorsee will not he held responsible. Story’s Prom. Notes, § 368.
A conditional promise to pay, or an offer to pay in a certain manner, is not binding as a waiver of the rights acquired by the laches of the holder if the terms be not accepted. Bayley on Bills 300; 2 Rob. Pract. 212, and cases there cited; Newberry v. Trowbridge, 13 Mich. R. 263. In the last named case it was held that an offer to pay a note in depreciated bank bills did not constitute a waiver of demand and notice. It is not an acknowledgment of liability to pay the note, but an offer of compromise, by way rather of set-off or accord and satisfaction than of payment.
It is clear that the offer by Boyd to pay Confederate money, which was rejected, cannot be regarded either as a waiver of his right to notice, or as a promise to pay the debt, or as in any manner showing that he acknowledged his liability as endorser.
We are therefore of opinion that the decree of the *638 Circuit court, so far as it declares that Boyd’s estate was not liable for the $5,000 note, should be affirmed.
But the court is further of opinion, that the decree 0f sai¿ Circuit court is erroneous in scaling the debt ° of $2,695, as a debt due in Confederate currency. The said Circuit court was right in holding Boyd’s estate responsible for this note. Upon this note endorsed by W. W. Boyd, there was an express waiver, endorsed in writing and signed by Boyd on the day of maturity. But the error of the Circuit court is in declaring this note to be payable in Confederate money, and in scaling its nominal to its specie value at the time the note became payable. It is clear from the evidence, that the debt (of which the note is evidence), was contracted prior to the year 1861, and before Confederate currency came into circulation. It was a loan by the bank, to the maker of the note, of gold or its equivalent. As an accommodation loan to the maker, it was renewed from time to time with the same endorser. The note was a renewal note. When the note was renewed the debt was not paid, but the debt remained the same. As was said by Judge Tucker, in Farmers Bank v. Mutual Assurance Society, 4 Leigh 88, “Equity looks to the substance, not the form of things. Equity sees that when a dealer at bank pays off a note by renewal the debt is the same; the debt remains unpaid, the credit only is extended.” See also Moses v. Trice, 21 Gratt. 556. Here the debt, contracted before 1861, and in a sound currency, still remains unpaid; the renewal is but an extension of the credit,’the debt remains the same.
The scaling act is only applicable, by its terms, to a case where “ the contract was according to the true understanding and agreement of the parties, to he fulfilled or performed in Confederate States treasury *639 notes, or was entered into with reference to said notes as a standard of value.” The act certainly does not reach a case like this, where the money loaned was sound currency, and the note sued upon was a renewal note, accepted as an accommodation of the debtor— and only as evidence of a pre-existing debt due in a sound currency. This is certainly not such a debt as the scaling act was intended to apply to, and it would work the greatest injustice to apply it to such a case. The court is therefore of opinion, that the decree of the Circuit court scaling the note of $2,695 is erroneous, and must be reversed; but that the decree in all other be affirmed.
The decree was as follows:
This day came again the parties by counsel; and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that there is no error in the decree of said Circuit court in so far as it declares that the estate of W. W. Boyd is not liable for the note of five thousand dollars, endorsed by said W. W. Boyd; it appearing to the court that said W. W. Boyd had no legal notice of the presentment and dishonor of said note, and that he never received notice thereof, nor that he ever after maturity and dishonor promised to pay the same.
But the court is further of opinion, that the decree of said Circuit court was erroneous in scaling the note for $2,695 from its nominal value to its value in gold at the day of its maturity; this court being of opinion, that the said note was a renewal note (renewed from time to time) for a debt due in gold or its equivalent; that it was for money loaned by the bank to the maker *640 in 1861, before Confederate money came into circulation; and it cannot be said in such a case, that “according to the true understanding and agreement of the parties, the contract was to be performed and fulfilled in Confederate States treasury notes, or was entered into with reference to such currency as a standard of value.” It is only such a contract that can be scaled under the “adjustment act.” The said Circuit court therefore erred in applying the scale to the note of $2,695, and should have entered a decree for its face value. And for this error it is decreed and ordered, that said decree of said Circuit court be reversed, and that the appellant recover against the appellees his costs by him expended in the prosecution of his appeal here, and that the cause be remanded to said Circuit court for further proceedings to be had therein in accordance with this decree: which is ordered to be certified to the said Circuit court of Botetourt county*
Decree reversed.