Present: ALL THE JUSTICES

COMMONWEALTH OF VIRGINIA

v. Record No. 092163     OPINION BY JUSTICE DONALD W. LEMONS
                                January 13, 2011
EMMANUEL MORRIS

        FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                    Donald M. Haddock, Judge

COMMONWEALTH OF VIRGINIA

v. Record No. 092346

WELLYN FLORES CHAN

        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    John C. Morrison, Jr., Judge

     In these two appeals in which criminal defendants were
convicted and sentenced pursuant to guilty pleas, we consider
whether each of the trial courts erred by granting motions for
writs of error coram vobis[1] and audita querela to modify the
criminal sentences imposed several years previously.

                I. Facts and Proceedings Below

        A. Commonwealth of Virginia v. Emmanuel Morris

     Emmanuel Morris ("Morris") was charged with grand larceny
pursuant to Code § 18.2-95 in the Circuit Court for the City of
Alexandria. Prior to trial, Morris' attorney asked whether he

_____

     [1] For purposes of this opinion, we use the term "coram
vobis," as recognized in Code § 8.01-677. We previously have
deemed coram vobis to include the term "coram nobis" and noted
that both shall be considered to be the same proceeding in
modern pleading and practice. Neighbors v. Commonwealth, 274
Va. 503, 509 n.5, 650 S.E.2d 514, 517 n.5 (2007).

was a U.S. citizen.  Morris responded by showing him a "green card," indicating that he was a lawful permanent resident. Morris' attorney replied, "good, then [I] can pursue [sic] the Judge to give [you] a lesser sentence based upon [your] pleading Guilty to the charge instead of prolonging the trial." Upon his guilty plea, Morris was convicted of one count of petit larceny and sentenced to 12 months in jail with 11 months suspended.

Morris later applied for United States citizenship in 2004, but his application was not approved; rather, Morris became subject to removal proceedings under the federal Immigration and Nationality Act ("INA") because of his 1997 conviction for "a crime involving moral turpitude . . . for which a sentence of one year or longer may be imposed." 8 U.S.C. § 1227(a)(2)(A)(i)(I)&(II) (2006 & Supp. II 2008). Consequently, in December 2008, an immigration judge[2] ordered that Morris be deported.

Following the order of deportation, Morris filed a motion in the Circuit Court for the City of Alexandria for a writ of error coram vobis or, alternatively, a writ of audita querela, requesting the trial court to modify his criminal sentence. The trial court issued an opinion letter holding that the writs

_____

[2] The immigration court is an administrative court run by the United States Department of Justice's Executive Office for Immigration Review.

of error coram vobis and audita querela are appropriate to review and modify a criminal sentence in Virginia under the facts of Morris' case.  Accordingly, the trial court reduced Morris' sentence by one day, which decreased his total sentence to 364 days.[3]

B.   Commonwealth of Virginia v. Wellyn Flores Chan

Wellyn Flores Chan ("Chan") was convicted, pursuant to a guilty plea, of misdemeanor assault and battery in the Circuit Court for the City of Norfolk in 2005.  Chan was sentenced to 12 months' imprisonment with all 12 months suspended, conditioned upon good behavior for 12 months.

In 2009, Chan applied for a duplicate legal permanent resident card with the United States Citizenship and Immigration Services ("USCIS") to begin the process to become a naturalized American citizen.  At that time, USCIS learned of Chan's prior conviction and determined that she was subject to mandatory detention and deportation under the INA, because she had been convicted of an "aggravated felony," which carried a sentence of at least one year.  The INA definition of an "aggravated felony" includes crimes that are neither "aggravated" nor "felonies" under state criminal law.  See 8 U.S.C. § 1101(a)(43) (2006 & Supp. III 2009).  In relevant

---

[3] Significantly, 364 days is less than one year (or 12 months) for purposes of the INA.  See Bayudan v. Ashcroft, 298 F.3d 799, 800 (9th Cir. 2002).

3

part, the INA definition of an "aggravated felony" includes a conviction for any "crime of violence" that carried a sentence of "at least one year," including suspended time. 8 U.S.C. § 1101(a)(43)(F). Consequently, immigration agents detained Chan in April of 2009, at which time she became subject to deportation proceedings.

Chan moved to dismiss the action for her deportation in the immigration court but her motion was denied. However, the immigration court granted Chan additional time to seek relief from the courts of the Commonwealth. Chan filed a petition for writs of audita querela and coram vobis in the Circuit Court for the City of Norfolk. The trial court subsequently heard oral argument on Chan's petition, granted her petition, and amended her sentence to "360 days as opposed to 12 months" by a nunc pro tunc order.

The Commonwealth timely filed its notice of appeal in both cases, and we granted an appeal in each case on the following assignments of error:

For Morris, Record No. 092163:

1. The Trial Court erred in its decision finding authority to apply the Writ of Coram Vobis, or alternatively the Writ of Audita Querela, as an appropriate remedy.

2. The Trial Court erred in granting Appellee relief under the Writ of Coram Vobis.

4

For Chan, Record No. 092346:

1. The trial court erred in holding that it possessed jurisdiction to modify a criminal defendant's sentence over four years after the trial court's entry of the final sentencing order in the case, where the 21-day period proscribed by Rule 1:1 had elapsed and where there were no applicable exceptions to the rule.

2. The trial court erred in holding that the traditional equitable Writ of Error Audita Querela is an available remedy in criminal cases.

3. Even if the Writ of Error Audita Querela is applicable to criminal proceedings, the trial court erred in issuing a Writ of Error Audita Querela under the circumstances of this case because it has provided the defendant with a secondary, non-statutory remedy for ineffective assistance of counsel.

4. Assuming, arguendo, that the trial court relied upon the alternative relief requested, the trial court erred in modifying the defendant's finalized sentence through a Writ of Error Coram Vobis.

## II. Analysis

### A. Standard of Review

"We review questions of law de novo, including those situations where there is a mixed question of law and fact." Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co., 270 Va. 566, 574, 621 S.E.2d 114, 118 (2005). Similarly,

> an issue of statutory interpretation is a pure question of law which we review de novo. When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest

5

> absurdity.  If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citations omitted).

### B.  Rule 1:1

Rule 1:1 provides that, "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."  We previously have stated that "[t]here are strong policy reasons favoring certainty of results in judicial proceedings. Accordingly, we attach a high degree of finality to judgments, whether obtained by default or otherwise.  Rule 1:1 implements that policy, and we apply it rigorously, unless a statute creates a clear exception to its operation."  McEwen Lumber Co. v. Lipscomb Brothers Lumber Co., 234 Va. 243, 247, 360 S.E.2d 845, 848 (1987) (citations omitted).

Therefore, "[u]nless otherwise provided by statute . . . Rule 1:1 prohibits the modification of a final order more than 21 days after the date of entry."  Charles v. Commonwealth, 270 Va. 14, 17 n.*, 613 S.E.2d 432, 433 n.* (2005).  Accordingly, "Rule 1:1 and long standing case law applying that rule

6

preclude a trial court from entering a second sentencing order altering an original sentencing order that has become final." Id. at 19, 613 S.E.2d at 434 (citing Robertson v. Superintendent of the Wise Correctional Unit, 248 Va. 232, 236, 445 S.E.2d 116, 118 (1994); Conner v. Commonwealth, 207 Va. 455, 457, 150 S.E.2d 478, 479 (1966)).

However the policy of finality contained in Rule 1:1 is not absolute. "The General Assembly has enacted various exceptions to this policy, [including] Code § 19.2-303 (court may modify unserved portion of sentence at any time before defendant is transferred to Department of Corrections) [and] Code § 8.01-428 (court may modify final order in certain listed circumstances)" Charles, 270 Va. at 17 n.*, 613 S.E.2d at 433 n.*, including fraud on the court, see Code § 8.01-428(D). Additionally, Code § 8.01-654, providing for the writ of habeas corpus, is an exception to the policy of finality contained in Rule 1:1.

Perhaps most notably for the purposes of these cases, the writ of audita querela and Code § 8.01-677 (error coram vobis) also provide exceptions to Rule 1:1 under proper circumstances. However, these cases do not fall within the contemplated circumstances required by Code § 8.01-677 for error coram vobis, and audita querela is not available for use to modify criminal sentences in Virginia.

7

C. Writ of Error Coram Vobis

In Dobie v. Commonwealth, 198 Va. 762, 769, 96 S.E.2d 747, 752 (1957), we explained the origin and function of the ancient common law writ of coram vobis:

> The principal function of the writ is to afford to the court in which an action was tried an opportunity to correct its own record with reference to a vital fact not known when the judgment was rendered, and which could not have been presented by a motion for a new trial, appeal or other existing statutory proceeding. It lies for an error of fact not apparent on the record, not attributable to the applicant's negligence, and which if known by the court would have prevented rendition of the judgment. It does not lie for newly-discovered evidence or newly-arising facts, or facts adjudicated on the trial. It is not available where advantage could have been taken of the alleged error at the trial, as where the facts complained of were known before or at the trial, or where at the trial the accused or his attorney knew of the existence of such facts but failed to present them.

(Citations omitted; emphasis added.) However, "[a]s a common law writ, coram vobis has been substantially limited by the General Assembly through Code § 8.01-677." Neighbors v. Commonwealth, 274 Va. 503, 508, 650 S.E.2d 514, 517 (2007). Code § 8.01-677 states that "[f]or any clerical error or error in fact for which a judgment may be reversed or corrected on writ of error coram vobis, the same may be reversed or corrected on motion, after reasonable notice, by the court." We specifically recognized the restriction of a writ of error

8

coram vobis only to clerical errors and certain errors of fact

when we reviewed the nearly identical statutory predecessor to

Code § 8.01-677[4]:

> Our statute is in simple, clear and unambiguous
> language, and we read it to mean what it says.
> It does not provide that it may be used to
> obtain a writ of error, or an appeal, or for any
> purpose other than to correct a "clerical error
> or error in fact."  . . . If its provisions
> should be widened, the enlargement should be
> effected by the legislature.

Blowe v. Peyton, 208 Va. 68, 74, 155 S.E.2d 351, 356 (1967).

We recognized this restriction of coram vobis again in

Neighbors, 274 Va. at 511, 650 S.E.2d at 518.  As these cases

involve no allegations of clerical error below, we will focus

our analysis on whether the circumstances of these cases

include "errors of fact" for which coram vobis would lie.

Specifically, we have held that such errors of fact

include cases " 'where judgment is rendered against a party

after his death, or who is an infant.' "  Dobie, 198 Va. at

770, 96 S.E.2d at 753 (quoting Richardson v. Jones, 53 Va. (12

Gratt.) 53, 55 (1855)).  Significantly, such errors of fact do

not merely render the judgment voidable upon a certain showing,

as in cases where ineffective assistance of counsel is alleged

---

[4] Former Code § 8-485 (1957), which we reviewed in Blowe,
stated: "For any clerical error or error in fact for which a
judgment or decree may be reversed or corrected on writ of
error coram vobis, the same may be reversed or corrected on
motion, after reasonable notice, by the court, or by the judge
thereof in vacation."

9

or where required notices have not been given.  See Strickland v. Washington, 466 U.S. 668, 691-96 (1984); Nelson v. Warden, 262 Va. 276, 280, 552 S.E.2d 73, 75 (2001).

Accordingly, the essential question in the cases before us is whether there was an "error of fact not apparent on the record, not attributable to the applicant's negligence, and which if known by the court would have prevented rendition of the judgment."  Dobie, 198 Va. at 769, 96 S.E.2d at 752 (emphasis added).  To answer this question, we must focus on the moment when Morris and Chan entered their guilty pleas to determine whether such an error of fact existed that would have prevented the court from having the authority to enter judgment.  We hold that there was no such error of fact.

Chan asserts that the error of fact that would have prevented the trial court from proceeding to judgment in her case is that "counsel for Ms. Chan never made the trial court aware of the facts that Ms. Chan was not born in the United States and that she was not a citizen of the United States."  We cannot agree that this "error" is the kind contemplated by Code § 8.01-677 for the purposes of coram vobis.  While the trial court might have been inclined to impose a lesser sentence had it known of Chan's non-citizen status, it still had the authority to render judgment against Chan.

Accordingly, the trial court erred in relying upon the writ of error coram vobis to amend Chan's original sentencing order.

Similarly, Morris asserts that "ineffective assistance of counsel resulting in dire immigration consequences [should] be deemed an error in fact[,]" that would have prevented the trial court from rendering judgment in his case. The trial court agreed. Specifically, the trial court in Morris' case identified the error of fact as the "misinformation" provided to Morris in response to Morris' indication of his immigration status, when Morris' attorney replied, "good, then [I] can pursue the Judge to give [you] a lesser sentence based upon [your] pleading Guilty to the charge instead of prolonging the trial." The trial court included in the identification of "error of fact," the "failure to inform the [c]ourt" of the "fact of misinformation to [Morris]." The trial court in Morris concluded in its letter opinion of June 26, 2009, "a conviction entered by the Court without full knowledge of the facts either by the Court or by the defendant at the time of his plea due to misadvice by his counsel would qualify as 'an error of fact for which a judgment may be reversed or corrected.' "

However, the trial court did not consider the type of error for which coram vobis will lie. As we previously have held, the proper test is whether the alleged error constitutes

11

"an error of fact not apparent on the record, not attributable to the applicant's negligence, and which if known by the court would have prevented rendition of the judgment." Dobie, 198 Va. at 769, 96 S.E.2d at 752 (emphasis added). While ineffective assistance of counsel may render a judgment voidable upon the necessary showing, it does not render the trial court incapable of rendering judgment, as do the errors of fact in cases " 'where judgment is rendered against a party after his death, or who is an infant.' " Dobie, 198 Va. at 770, 96 S.E.2d at 753 (quoting Richardson, 53 Va. (12 Gratt.) at 55).

Accordingly, a claim of ineffective assistance of counsel does not constitute an error of fact for which coram vobis will lie under Code § 8.01-677, because such a claim would not "have prevented rendition of the judgment." Dobie, 198 Va. at 769, 96 S.E.2d at 752. The trial court erred in relying upon coram vobis to modify Morris' original sentencing order.

It should be noted that in making his ineffective assistance of counsel argument, Morris relied in large part upon the United States Supreme Court's recent ruling in Padilla v. Kentucky, 559 U.S. ___, ___, 130 S.Ct. 1473, 1486 (2010), regarding the obligation of counsel to advise non-citizen criminal defendants whether a particular plea carries the risk of deportation. In Padilla, the Supreme Court stated that it

12

is the Court's "responsibility under the Constitution to ensure that no criminal defendant – whether a citizen or not – is left to the 'mercies of incompetent counsel.' " Id. (citation omitted; emphasis added). Accordingly, the Supreme Court held that the United States Constitution's Sixth Amendment requires counsel who represent non-citizen criminal defendants to "inform [their] client whether his [or her] plea carries a risk of deportation." Id.

While Chan asserts a different "error of fact," she made a similar argument regarding the Supreme Court's holding in Padilla. Morris' and Chan's reliance on Padilla is misplaced. While Morris and Chan may have suffered ineffective assistance of counsel according to Padilla, and may have been successful had they timely filed petitions for writs of habeas corpus pursuant to Code § 8.01-654, neither did so. Ineffective assistance of counsel does not constitute an error of fact for the purposes of coram vobis under Code § 8.01-677.

D. Writ of Audita Querela

The common law writ of audita querela originated in England in the early 14th century to provide relief to civil judgment debtors. See Ira P. Robbins, The Revitalization of the Common-Law Civil Writ of Audita Querela as a Post-Conviction Remedy in Criminal Cases: The Immigration Context and Beyond, 6 Geo. Immigr. L.J. 643, 646 (1992) (citing

13

Theodore F.T. Plucknett, A Concise History of the Common Law 394 (5th ed. 1956)).[5]

Code § 1-200 states that, "[t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." Additionally, Code § 1-201 states that,

> [t]he right and benefit of all writs, remedial and judicial, given by any statute or act of Parliament, made in aid of the common law prior to the fourth year of the reign of James the First [1606-1607], of a general nature, not local to England, shall still be saved, insofar as the same are consistent with the Bill of Rights and Constitution of this Commonwealth and the Acts of Assembly.

(Emphasis added.)

The fourth year of the reign of James the First coincided with the founding of Jamestown. Consequently, our adoption of English common law, and the rights and benefits of all writs in aid of English common law, ends in 1607 upon the establishment of the first permanent English settlement in America, Jamestown. From that time forward, the common law we recognize is that which has been developed in Virginia. More simply

---

[5] See also Black's Law Dictionary 150 (9th ed. 2009) (defining audita querela as "[a] writ available to a judgment debtor who seeks a rehearing of a matter on grounds of newly discovered evidence or newly existing legal defenses").

stated, English common law and writs in aid of it prior to the settlement of Jamestown (insofar as the same are consistent with the Bill of Rights and Constitution of the Commonwealth and the Acts of Assembly), together with common law developed in Virginia thereafter, constitute the corpus of common law that guides our analysis.

Accordingly, the writ of audita querela, which was part of the common law prior to 1607, is the law of the Commonwealth. Because the General Assembly has never abolished the writ of audita querela in Virginia, it continues in force today by virtue of Code §§ 1-200 and 1-201.

However, while the General Assembly has not abolished the writ, we have noted that "[i]t seems to be true that in our practice the motion to quash is a summary remedy in use in all cases where by the ancient practice the party would be entitled to a writ of audita querela." Lowenbach v. Kelley, 111 Va. 439, 443, 69 S.E. 352, 354 (1910) (citing Steele v. Boyd, 33 Va. (6 Leigh) 547, 552-53 (1835)). Accordingly, while audita querela may still exist in Virginia, it has fallen into disuse in civil practice. See Steele, 33 Va. (6 Leigh) at 552-54; Smock v. Dade, 26 Va. (5 Rand.) 639, 644-45 (1826) ("[W]e are satisfied . . . that the more summary, and less expensive mode of proceeding by motion [is] proper, and that relief may be given in this way in all cases, where by the ancient practice

15

the party would be entitled to an Audita Querela."); Nicolson v. Hancock, 14 Va. (4 Hen. & M.) 491, 501 (1810) (observing that audita querela "has long since given way to a summary mode of relief upon motion").

What is certain is that the writ of audita querela has never been applicable to modify a criminal sentence in Virginia. The only cases in which this Court has considered audita querela have involved civil judgments. See, e.g., Lowenbach, 111 Va. at 443, 69 S.E. at 354; Steele, 33 Va. (6 Leigh) at 547; Smock, 26 Va. (5 Rand.) at 644-45.

The practice in Virginia is the same as it was in England. The writ was only available at common law in England for use by civil judgment debtors. See Turner v. Davies, 85 Eng. Rep. 871, 878-79 (1670). Specifically, the writ was available for use by judgment debtors to release them from judgment where the judgment "ought not to have issued," such as in cases "where the party has a good defence [sic], but had not, nor has any other means to take advantage of it," id. at 878-79, or where the debtors had paid the debt or otherwise been discharged from the obligation. See, e.g., Ognel v. Randol, 79 Eng. Rep. 23 (1701); Corbett v. Barnes, 79 Eng. Rep. 985 (1792). There does not appear to be any case in England prior to 1607 in which the writ was used to seek post-conviction relief from a criminal sentence.

16

Some jurisdictions have held that audita querela is available as a remedy to modify a criminal sentence. See Keith v. State, 163 So. 884, 885 (Fla. 1935); Balsley v. Commonwealth, 428 S.W.2d 614, 616 (Ky. Ct. App. 1968). However, neither this Court nor any English court prior to the writ's adoption in this Commonwealth has ever applied the writ of audita querela in this manner. We will not do so now.

Based upon the purpose and history of audita querela at common law in both England and Virginia, we hold that the writ of audita querela is not available to seek post-conviction relief from criminal sentences in Virginia.

## III.  Conclusion

For the reasons stated, we hold that the errors of fact alleged by Morris and Chan in the cases before us do not constitute "errors of fact" for the purposes of coram vobis, as contemplated by Code § 8.01-677.  Also, we hold that the writ of audita querela may not be used to seek post-conviction relief from criminal sentences in Virginia.  Accordingly, the trial courts erred in their reliance upon the writs of error coram vobis and audita querela to modify the criminal sentences imposed in these cases, and we will reverse the judgment of the Circuit Court for the City of Alexandria and the judgment of the Circuit Court for the City of Norfolk in these cases, and dismiss the petitions.

17

Record No. 092163 – <u>Reversed and dismissed</u>.
Record No. 092346 – <u>Reversed and dismissed</u>.