**CORRECTED OPINION**

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

Eric C. Wilson,

        *Petitioner-Appellant,*

v.

W. Steven Flaherty,
Superintendent, Virginia
Department of State Police,

        *Respondent-Appellee.*

No. 11-6919

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
John A. Gibney, Jr., District Judge.
(3:10-cv-00536-JAG)

Argued: March 22, 2012

Decided: August 15, 2012

Opinion header corrected: August 17, 2012

Before NIEMEYER, DAVIS, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Davis joined. Judge Davis wrote a separate concurring opinion. Judge Wynn wrote a dissenting opinion.

## COUNSEL

**ARGUED:** George A. Somerville, TROUTMAN SANDERS, LLP, Richmond, Virginia, for Appellant. Virginia Bidwell Theisen, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Stephen A. Northup, Anthony F. Troy, Joshua D. Heslinga, TROUTMAN SANDERS, LLP, Richmond, Virginia, for Appellant. Kenneth T. Cuccinelli, II, Attorney General of Virginia, Benjamin H. Katz, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

---

## OPINION

NIEMEYER, Circuit Judge:

Five years after Eric Wilson fully served his sentence for a Virginia state rape conviction, he filed this habeas corpus petition under 28 U.S.C. § 2254, challenging his conviction. To satisfy § 2254's jurisdictional requirement that he be "in custody" at the time he filed his petition, *see* 28 U.S.C. § 2254(a) (granting jurisdiction to the district courts to entertain "an application for a writ of habeas corpus in behalf of a person *in custody* pursuant to the judgment of a State court" (emphasis added)), Wilson alleged that the sex offender registration requirements of Virginia and Texas law impose sufficiently substantial restraints on his liberty so as to amount to custody.

The district court dismissed Wilson's petition for lack of jurisdiction, holding that because Wilson had fully served the sentence for his rape conviction, he was no longer "in custody," as required by § 2254(a).

We affirm. While it appears that Wilson has mounted a serious constitutional challenge to his conviction, in which he

vigorously asserts his innocence, we conclude that the sex offender registration requirements of Virginia and Texas are collateral consequences of his conviction that are independently imposed on him because of his status as a convicted sex offender and not as part of his sentence. We also note that the sex offender registration requirements and related consequences do not impose sufficiently substantial restraints on Wilson's liberty so as to justify a finding that he is in the custody of state officials.

I

Wilson was one of the "Norfolk Four," a group of four young Navy sailors who were convicted of the rape and/or murder of Michelle Bosko, the wife of another Navy sailor. Wilson himself was acquitted of murder but convicted of rape in 1999 and sentenced to eight and one-half years' imprisonment. Wilson was released from custody in 2005 after having fully served his sentence, and he returned to his parents' home in Texas.

Following the convictions, the investigation and prosecution of the Norfolk Four were called into question by new evidence, including allegations of fraud on the part of the lead investigator and a DNA match to another individual who confessed to and was later convicted of the rape and murder of Bosko. We recently set forth the facts relating to the Bosko murder, the investigation, trials, and exculpatory new evidence in detail, affirming the district court's grant of the habeas petition of Derek Tice, another member of the Norfolk Four. *See Tice v. Johnson*, 647 F.3d 87 (4th Cir. 2011).

In 2004, a year before Wilson was released from prison, he, along with the other three members of the Norfolk Four, petitioned the Governor of Virginia for an absolute pardon on the grounds of innocence, pursuant to Article V, § 12, of the Virginia Constitution and Virginia Code § 53.1-229. Ultimately, in 2009, Virginia Governor Tim Kaine, after reviewing the

pardon applications anew, concluded that the Norfolk Four "had raised substantial doubt about the validity of their convictions but had not conclusively established their innocence." He thus issued conditional pardons to the three members of the Norfolk Four who were still incarcerated, freeing them from prison, but keeping their convictions in place. He denied any relief to Wilson because Wilson had already been released.

Because of his conviction for rape, Wilson was required to and did register with the Virginia State Police as a sex offender, pursuant to Virginia's Sex Offender and Crimes Against Minors Registry Act, Va. Code § 9.1-900, *et seq*. As required by that law, he registered before leaving prison. Wilson was also required to reregister for any significant changes in residence, employment, online contact information, or vehicle ownership while a Virginia resident, Va. Code § 9.1-903, and, because his rape conviction was considered a "sexually violent offense," was required to reregister and confirm all of his identifying information every 90 days, *id.* § 9.1-904. Upon moving to Texas, Wilson was also required to register there in a manner similar to that required by Virginia. In addition, Wilson has asserted that he cannot, based on other regulations, adopt his stepson or work as an electrician at sites that require clearance, among other things.

Wilson filed this petition for a writ of habeas corpus in March 2010, some five years after his sentence was fully served, alleging that he is actually innocent; that the Commonwealth of Virginia suppressed exculpatory evidence; and that he was the victim of a corrupt investigative process. Naming as the respondent W. Steven Flaherty, the Superintendent of the Virginia Department of State Police, Wilson alleged that he was being unlawfully restrained by the Virginia State Police in its administration of the Virginia Sex Offender and Crimes Against Minors Registry Act because he was unlawfully convicted and subjected to registration requirements. For relief, he requested that his rape conviction

be declared null and void; that he be immediately released from his violent sex offender status; and that Virginia expunge any and all records relating to his conviction. Wilson also filed a motion to stay and abey his petition to permit his exhaustion in the Virginia state courts of his corrupt-investigative-process claim.

In response, the Superintendent of the State Police contended that the district court should deny the motion to stay and abey because Wilson was not "in custody for purposes of federal habeas corpus and thus [the district court] lack[ed] jurisdiction to consider his current habeas case." *See* 28 U.S.C. § 2254(a); *see also Maleng v. Cook*, 490 U.S. 488, 490-91, 494 (1989) (per curiam) (holding that a habeas petitioner must be "'in custody' under the conviction or sentence under attack at the time his petition is filed" and that the failure to establish the in custody requirement deprives a federal habeas court of subject matter jurisdiction).

The district court agreed with the Superintendent and dismissed Wilson's petition, based on a lack of subject matter jurisdiction. Because Wilson had made a substantial showing of the denial of a constitutional right, however, the court issued a certificate of appealability "as to the specific issue regarding whether Wilson is considered 'in custody,' such that the relief afforded by habeas corpus is available to him." This appeal followed.

II

Recognizing that he filed his petition only after fully serving his sentence, Wilson contends nonetheless that he remains "in custody" of the Virginia State Police because of the "substantial restraints on his liberty" that the State Police are imposing on him by enforcing Virginia's sex offender registration statute. He does not dispute the proposition that the collateral consequences of a conviction do not generally suffice to find one "in custody" but argues that, as a sex offender,

he suffers from far more substantial restraints than the normal consequences of a felony conviction. In addition to the general registration obligations, which he must fulfill in person and which require him to provide a wide "array of physical and other personal identifying information," he notes that he has to reregister every 90 days because his offense was a "sexually violent offense," *see* Va. Code 9.1-904. He also must reregister in person for any changes in residence, employment, vehicle ownership, or online contact information. *See id.* § 9.1-903. Moreover, before moving from Virginia to Texas, Wilson was required to notify the Virginia State Police, who in turn notified the designated law enforcement agency in Texas. *See id.* § 9.1-903(D). He asserts that when he moved to Texas, he was and continues to be subject to similar registration requirements. *See* Tex. Code Crim. Proc. Ann. art. 62.001, *et seq.* In addition, he claims that under Texas law he must carry a sex offender identification card at all times and renew his driver's license every year rather than every six years and must do so in person.

Wilson also points to other constraints resulting from his status as a sex offender that are not imposed by the registration statutes. He claims that he is unable to work as an electrician at particular jobs, such as at government buildings, or to enroll in electrician school to advance his career because he cannot pass the required background checks. He claims that he has been unable to adopt his eight-year-old stepson; that, to visit his stepson in school, he must submit to a humiliating background check; that, for an unexplained reason, he was not permitted to travel to Canada for his honeymoon; and that he must notify authorities if he is going to be away from home for more than 24 hours.

Finally, Wilson points out that his failure to comply with the state registration requirements subjects him to criminal penalties, both under state and federal law.

Based on these restraints on his liberty, Wilson contends that he remains "in custody," thereby satisfying the "in cus-

tody" jurisdictional requirement of 28 U.S.C. § 2254 and enabling the federal habeas court to consider his challenges to his rape conviction.

Section 2254 provides that a federal court or judge

> shall entertain an application for a writ of habeas corpus in behalf of *a person in custody pursuant to the judgment of a State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (emphasis added). The Supreme Court has construed this provision to be jurisdictional and to require that "the habeas petitioner be '*in custody' under the conviction or sentence under attack* at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (emphasis added). Moreover, the Court has held that "in custody" does not refer just to physical confinement but also to parole served as part of a sentence involving physical confinement. *See Jones v. Cunningham*, 371 U.S. 236 (1963).

In *Jones*, the Court held that a prisoner who had been released on parole remained "in custody" because "the custody and control of the Parole Board involve[d] significant restraints on petitioner's liberty," including confinement "to a particular community, house, and job, at the sufferance of his parole officer," periodic reporting requirements, and restrictions on certain activities. 371 U.S. at 242. The Court observed that because of these restrictions, the parolee "must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison to serve out the very sentence he claims was imposed upon him in violation of the United States Constitution." *Id.*; *see also Hensley v. Mun. Court*, 411 U.S. 345, 351 (1973) (holding that a defendant released on his own recognizance before beginning his sentence was "in custody" because he was "subject to restraints not shared by the public generally" in that he

had an "obligation to appear at all times and places as ordered by any court or magistrate of competent jurisdiction" and his "freedom of movement rest[ed] in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice" (internal quotation marks and alterations omitted)).

Despite the limited expansion of the strict historical meaning of "in custody" brought about by *Jones* and later cases, the Supreme Court later cautioned that it had "never held . . . that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." *Maleng*, 490 U.S. at 491. *Maleng* recognized that although a petitioner is subject to the "collateral consequences" of a prior conviction, such as a sentencing enhancement in connection with a subsequent offense, he "suffers no present restraint from a conviction" and therefore is not in custody after fully serving his sentence. *Id.* at 492. As the Court explained, "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Id.* It observed that a contrary ruling "would mean that a petitioner whose sentence has completely expired could nonetheless challenge the conviction for which it was imposed at any time on federal habeas. This would read the 'in custody' requirement out of the statute . . . ." *Id.*

In this case, it is undisputed that Wilson fully served his sentence and was *unconditionally* released from custody in 2005. Thus, there was no term or condition of his sentence that could subject him to reincarceration or impose any other restraint on his liberty. Instead, all of the registration requirements on which Wilson relies to argue that his liberty is being substantially restrained arise from the collateral, independent requirements imposed by the sex offender registration statutes in Virginia and Texas, as well as by the federal statute. While it is true that the triggering fact for these statutes is Wilson's

rape conviction, the registration requirements are not imposed *as a sentence for his rape* but rather as a collateral consequence of his having been convicted of rape. If we were to find that the requirements of those statutes were not in fact collateral consequences, then we would be holding that any convicted sex offender could challenge his conviction "at any time on federal habeas," with the consequence that the in-custody jurisdictional requirement of § 2254 would be read out of the statute. *Maleng*, 490 U.S. at 492. *Maleng* unambiguously rules out such a result.[1]

Not only has the Supreme Court never held that a defendant is in custody for habeas purposes when the sentence imposed for the conviction has *fully* expired at the time his petition is

---

[1]The dissent relies on what it terms a "pertinent line of precedents issued after *Maleng*" to claim that the Supreme Court has suggested that "there are instances in which a fully served sentence may be collaterally challenged" and that, in cases of actual innocence, we should not "elevate procedural requirements over more fundamental concerns." *Post*, 17-20. The dissent is unmistakably correct that *procedural* barriers may be overcome by compelling claims of actual innocence and that prior convictions may, in some circumstances, be *collaterally* challenged. But the Supreme Court has never suggested that *jurisdictional* barriers should be ignored based on the merits of the claim, and the cases on which the dissent relies reaffirm *Maleng*'s core holding that a habeas petitioner cannot *directly* challenge a sentence that he has fully served. In both *Daniels v. United States*, 532 U.S. 374 (2001), and *Lackawanna County District Attorney v. Coss*, 532 U.S. 394 (2001), the habeas petitioners were *in physical custody* pursuant to sentences enhanced, based on prior convictions. To find jurisdiction, the *Coss* Court construed the habeas petition, as did the *Maleng* Court earlier, as "'asserting a challenge to the [current] sentence, as enhanced by the allegedly invalid prior conviction.'" 532 U.S. at 401-02 (quoting *Maleng*, 490 U.S. at 493 (alterations omitted)). In so doing, it reaffirmed that because "Coss is no longer serving the sentences imposed pursuant to his 1986 convictions . . . , [he] therefore *cannot bring a federal habeas petition directed solely at those convictions*." *Id.* at 401 (emphasis added). Because Wilson, unlike the petitioners in the cases cited by the dissent, cannot mount a *direct* challenge to *any* conviction or sentence he is currently serving, these precedents are not "pertinent" as the dissent claims, but are singularly inapplicable.

filed, but no court of appeals has so held either.[2] More particularly, every court of appeals to have considered whether the registration requirements imposed on sex offenders place the sex offender in custody for purposes of habeas jurisdiction has concluded that they do not. *See, e.g.*, *Virsnieks v. Smith*, 521 F.3d 707 (7th Cir. 2008); *Leslie v. Randle*, 296 F.3d 518 (6th Cir. 2002); *Henry v. Lungren*, 164 F.3d 1240 (9th Cir. 1999); *Williamson v. Gregoire*, 151 F.3d 1180 (9th Cir. 1998). We will not depart from this unanimous body of law. *See Virsnieks*, 521 F.3d at 718 ("[G]iven the habeas statute's 'in custody' requirement, courts have rejected uniformly the argument that a challenge to a sentence of registration under a sexual offender statute is cognizable in habeas").

Our sister circuits have recognized that "[i]n *Jones* and other cases expanding the definition of custody, the [Supreme] Court emphasized the physical nature of the restraints on liberty that satisfied the custody requirement." *Virsnieks*, 521 F.3d at 718. And they have all agreed that sex offender registration requirements, whether they require in-person registration or allow registration by mail or electronic means, do not constitute such physical restraints. *See, e.g.*, *Leslie*, 296 F.3d at 522 (holding that Ohio's sex offender registration, requiring in-person registration, did not constitute custody); *Henry*, 164 F.3d at 1242 ("Registration, even if it must be done in person at the police station, does not constitute the type of severe, immediate restraint on physical liberty necessary to render a petitioner 'in custody' for the purposes of federal habeas relief"). The only *present* physical restraints Wilson complains about in his declaration are the Texas law

---

[2] The dissent, continuing the error it makes in interpreting *Daniels* and *Coss*, *ante*, 9 n.1, disputes this statement, citing *Zichko v. Idaho*, 247 F.3d 1015 (9th Cir. 2001). *Post*, at 16 n.2. In *Zichko*, however, the defendant had *been arrested and incarcerated* for failing to register as a sex offender. *See id.* at 1019. The Ninth Circuit relied on that *present* custody, and, in so doing, reaffirmed that "merely being *subject* to a sex offender registry requirement *does not satisfy the 'in custody' requirement after the original rape conviction has expired.*" *Id.* (emphasis added).

requirements that he appear in person each year to register as a sex offender and that he appear in person to renew his driver's license so that he can get a new picture made. He also had to register in person with Virginia authorities upon release and during his residency there. Unlike the physical restraints imposed on the petitioners' freedom of movement in *Jones* and *Hensley*, however, these sex offender registration requirements do not impair Wilson's "ability to move to a different community or residence" or condition such movements "on approval by a government official." *Leslie*, 296 F.3d at 522. Nor do they "prohibit[ ] [him] from engaging in any legal activities." *Id.* Further, the laws do not disincentivize moving by making it more onerous for Wilson to live in other places because the registration and notification requirements are the same whether Wilson moves or remains in his present location at all times. *See Williamson*, 151 F.3d at 1184 ("Certainly the loss of a driver's license amounts to a much greater limitation on one's freedom of movement than does the . . . sex offender law, but the former does not satisfy the 'in custody' requirement either"). "In short, the constraints of this law lack the discernible impediment to movement that typically satisfies the 'in custody' requirement." *Id.*

To be sure, Wilson points to other particular consequences flowing from his conviction. For example, he claims that he cannot adopt his stepson and that he cannot work on certain governmental projects requiring clearance. But these restrictions are simply particularized collateral consequences stemming from the way States and individuals have reacted to persons who have been convicted of sex offenses, just as statutes impose other collateral consequences generally on persons convicted of a felony. *See Maleng*, 490 U.S. at 492.

At bottom, we agree with the district court that Wilson has not demonstrated that he is "in custody" so as to satisfy the jurisdictional requirement for a federal habeas case under 28 U.S.C. § 2254. To rule otherwise would drastically expand the writ of habeas corpus beyond its traditional purview and

render § 2254's "in custody" requirement meaningless. As the First Circuit has eloquently explained:

> Adverse occupational and employment consequences are a frequent aftermath of virtually any felony conviction. Government regulation, in the nature of the imposition of civil disabilities—say, loss of voting rights or disqualification from obtaining a gun permit—often follows a defendant long after his sentence has been served. To hold that the custody requirement is so elastic as to reach such sequellae would be to stretch the concept of custody out of all meaningful proportion, to render it limp and shapeless—in the last analysis, to make habeas corpus routinely available to all who suffer harm emanating from a state conviction, regardless of actual custodial status. We abjure such an expansive rule.

*Lefkowitz v. Fair*, 816 F.2d 17, 20 (1st Cir. 1987).

### III

Wilson forcefully argues that his petition presents a compelling claim of actual innocence and that a writ of habeas corpus is necessary for him to press his challenge in state courts. But the strength of his claim on the merits cannot confer subject matter jurisdiction on a federal habeas court. *See Maleng*, 490 U.S. at 494 (ruling on the "narrow issue" of "'custody' *for subject-matter jurisdiction* of the habeas court" and expressing no view on the merits (emphasis added)).

Individuals in Wilson's position are not, however, without remedies to clear their names. Wilson might be able to invoke the writ of *coram nobis* in state court, which "affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." *Estate of McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995); *see also United States v. Sandles*, 469 F.3d 508, 517 (6th Cir. 2006)

("The proper means of attacking the validity of a sentence which has already been served . . . is by writ of error coram nobis" (alterations omitted)). The court in *Estate of McKinney* explained that *coram nobis* "provides a remedy for those suffering from the lingering *collateral consequences* of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *Estate of McKinney*, 71 F.3d at 781 (emphasis added) (internal quotation marks omitted).[3]

In making these observations, however, we do not pass on the merits of Wilson's claim, nor do we suggest the outcome of any further proceeding. We simply and narrowly affirm the district court's conclusion that Wilson is not "in custody" within the meaning of 28 U.S.C. § 2254(a) and that therefore the district court lacked subject matter jurisdiction to entertain his habeas petition.

*AFFIRMED*

DAVIS, Circuit Judge, concurring:

I join Judge Niemeyer's well-reasoned opinion in full and write briefly to offer these observations. The majority opinion shows with perfect clarity why the authorities relied on by the dissent cannot do the work assigned them in this case. *See* Maj. Op. nn. 1 and 2. The plain fact is that the district court

---

[3]Although the dissent may be correct that Virginia has limited the application of the writ of *coram nobis*, *see post*, at 22-23 n.4, the writ remains available for "an error of fact not apparent on the record, not attributable to the applicant's negligence, and which if known by the court would have prevented rendition of the judgment." *Commonwealth v. Morris*, 281 Va. 70, 78 (2011) (quoting *Dobie v. Commonwealth*, 198 Va. 762, 769 (1957)). The dissent goes to great lengths to highlight the exceptional nature of Wilson's claim, even asking this court to make an exception to a jurisdictional rule in order to entertain the petition. Although we find such an exception unsupportable in light of clear Supreme Court precedent, we surmise that Wilson can undoubtedly rely on these same favorable facts in pursuing other remedies, including *coram nobis*, within the state judicial and political systems.

and this court lack jurisdiction over this action under 28 U.S.C. § 2254(a).

What is surely equally certain is that when Congress enacted and the President signed the bill in which § 2254(a) is now codified, modern violent sex offender statutes were not remotely within anyone's contemplation. The requirements these statutes impose are *sui generis*. But viewed pragmatically, as they should be, the requirements operate *de facto* as *probationary terms*, the violation of which are expected to lead to the imposition, upon conviction, of custodial sentences.* Indeed, in federal court, judges routinely impose sex offender registration requirements at sentencing as a mandatory condition of supervised release. *See* 18 U.S.C. § 3583(d) ("The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act."); U.S.S.G. § 5D1.3(a)(7) (requiring registration for persons convicted of sexual offenses as a mandatory condition of supervised release). Neither the formalism of the extant legal arrangement crafted in the modern state statutes, nor resort to abstractions such as "collateral consequences," obscures this reality.

Wilson has alleged compelling claims that significant legal burdens and disabilities imposed on him are wholly unjustified by any legitimate governmental interest; morally and legally, he is clearly entitled, in my judgment, to a judicial forum to test the accuracy of his claims. If, as the dissent posits, Virginia law would foreclose access to such a judicial

---

*Cf. Smith v. Doe*, 538 U.S. 84, 115-16 (2003) (Ginsburg, J., dissenting) ("Furthermore, the [Alaska Sex Offender Registration] Act's requirements resemble historically common forms of punishment . . . . Its registration and reporting provisions are comparable to conditions of supervised release or parole; its public notification regimen, which permits placement of the registrant's face on a webpage under the label 'Registered Sex Offender,' calls to mind shaming punishments once used to mark an offender as someone to be shunned." (citation omitted)).

forum under *coram nobis* or some other extraordinary procedure, I believe a due process claim under 42 U.S.C. § 1983 would raise grave issues of profound moment deserving of serious judicial examination. All that said, however, I am constrained to agree that within the unmistakable confines of the Supreme Court's controlling precedents in its interpretation of Congress's grant of subject matter jurisdiction in cases of this type, the district court lacks the power to adjudicate Wilson's claims.

WYNN, Circuit Judge, dissenting:

> Wilson has alleged compelling claims that significant legal burdens and disabilities imposed on him are wholly unjustified by any legitimate governmental interest; morally and legally, he is clearly entitled … to a judicial forum to test the accuracy of his claims.[1]

Petitioner Eric Wilson was convicted in 1999 in Virginia following an investigation and trial that have subsequently been shown to be rife with gross police misconduct; indeed, as conceded by the majority opinion, Wilson has a "compelling claim of actual innocence" of the crimes for which he has fully served the sentence imposed. Notwithstanding that fact, and based solely on what now seems almost certainly to be a wrongful underlying conviction, Wilson remains subject to significant restraints on his liberty. For the duration of his life, depending on the state and jurisdiction in which he lives, Wilson will be required to regularly report in-person to the police and prevented from being present in any location generally frequented by children—even though he is almost certainly innocent of the sex offenses that would normally require such measures.

The majority opinion today concludes that Wilson, a person with a compelling claim of innocence, has no recourse in fed-

---

[1]*Ante* at 14-15 (Davis, J., concurring).

eral court to test the accuracy of his claim because the deprivations on liberty incident to sexual offender registration are too trivial and too collateral to satisfy the requirement that a habeas petitioner be in custody. But it is well settled that the writ of habeas corpus, with "its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty," *Jones v. Cunningham*, 371 U.S. 236, 243 (1963), is not so narrow, static, or formalistic as to permit the violation of our Constitution by allowing an innocent person to endure severe deprivations of liberty imposed by the government. Because I find that our Constitution, prior jurisprudence, and habeas statutes should not be read to compel such an unjust result, I must respectfully dissent.

## I.

### A.

The majority opinion concedes that Wilson's claims of actual innocence, prosecutorial misconduct, and police corruption amount to "a serious constitutional challenge to his conviction." *Ante* at 2. Nonetheless, relying on *Maleng v. Cook*, 490 U.S. 488 (1989) (per curiam), the majority opinion denies Wilson the right to proceed on a writ of habeas corpus because "the Supreme Court [has] never held that a defendant is in custody for habeas purposes when the sentence imposed for the conviction has fully expired at the time his petition is filed, [and] no court of appeals has so held either."[2] *Ante* at

---

[2]Despite the majority opinion's contention to the contrary, a court of appeals—specifically, the Ninth Circuit—has held that a defendant is in custody for habeas purposes even when the sentence imposed for the original conviction has fully expired at the time his petition is filed. *Zichko v. Idaho*, 247 F.3d 1015 (9th Cir. 2001). It is true, as the majority opinion notes, *ante* at 10, n.2, that the petitioner in *Zichko* was incarcerated for failure to register as a sex offender at the time he filed his petition. But this does not change the fact that the Ninth Circuit allowed the defendant

9-10. Yet that observation does not compel the result the majority opinion reaches because a pertinent line of precedents issued after *Maleng* recognizes an exception for a petitioner with compelling evidence of actual innocence and no available forums for redress.

In *Daniels v. United States*, 532 U.S. 374 (2001), the Supreme Court considered whether an individual may use a writ of habeas corpus to challenge an enhanced federal sentence on the ground that his prior convictions were unconstitutionally obtained. *Id.* at 376. Although the Supreme Court held that "as a general rule" the petitioner could not challenge these fully expired prior convictions,[3] the Supreme Court acknowledged that "[t]here may be rare circumstances in which [habeas relief] would be available, but we need not address the issue here." *Id.* The Supreme Court further expressed its concerns as follows:

to use a habeas petition to collaterally "challeng[e] an earlier, expired rape conviction." *Zichko*, 247 F.3d at 1019. The clear implication of the majority opinion's attempt to distinguish *Zichko* leads to the untenable conclusion that Wilson could meet the custody requirements for filing his § 2254 petition by intentionally violating his sex offender registration requirements and causing his own arrest.

[3]Notably, the Supreme Court's holding in *Daniels* was not based on a determination that the petitioner had failed to satisfy the custody requirement of § 2255 or that the habeas statute was insufficiently robust to allow for a collateral attack of an expired sentence through a challenge to an enhanced sentence. *See* 532 U.S. at 383 ("To be sure, the text of § 2255 is broad enough to cover a claim that an enhanced federal sentence violates due process."). Instead, the Supreme Court's holding in *Daniels* rested on the "the goals of easy administration and finality," which alone "justif[ied] foreclosing relief under § 2255." *Id.* However, even these grounds were based on an assumption that "[the] prior conviction used to enhance [the] federal sentence is no longer open to direct or collateral attack in its own right *because the defendant failed to pursue those remedies* while they were available (or *because the defendant did so unsuccessfully*), [such] that defendant is without recourse." *Id.* at 382 (emphasis added).

> We recognize that there may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own. The circumstances of this case do not require us to determine whether a defendant could use a motion under § 2255 to challenge a federal sentence based on such a conviction. *Cf.*, *e.g.*, 28 U.S.C. § 2255 (1994 ed., Supp. V) (allowing a second or successive § 2255 motion if there is "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense"); *ibid.* (tolling 1-year limitation period while movant is prevented from making a § 2255 motion by an "impediment . . . created by governmental action in violation of the Constitution or laws of the United States").

*Id.* at 383-84.

On the same day that the Supreme Court issued *Daniels*, the Supreme Court also issued its decision in *Lackawanna County Dist. Att'y v. Coss*, 532 U.S. 394 (2001). In *Coss*, the Supreme Court considered "whether federal [habeas] postconviction relief is available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody." *Id.* at 396. As such, the Supreme Court in *Coss* addressed "the question we explicitly left unanswered in *Maleng*: 'the extent to which the [prior expired] conviction itself may be subject to challenge in the attack upon the [current] senten[ce] which it was used to enhance.'" *Id.* at 402 (quoting *Maleng*, 490 U.S. at 494) (alterations in original). As in *Daniels*, the Supreme Court in *Coss* held:

[O]nce a state conviction is no longer open to direct or collateral attack in its own right *because the defendant failed to pursue those remedies* while they were available (or *because the defendant did so unsuccessfully*), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id.* at 403-04 (emphasis added) (internal citation omitted). However, the Supreme Court again recognized that certain exceptions to this general rule exist, specifically for compelling claims of actual innocence coupled with an absence of available forum for redress:

We stated in *Daniels* that another exception to the general rule precluding habeas relief might be available, although the circumstances of that case did not require us to resolve the issue. We note a similar situation here.

The general rule we have adopted here and in *Daniels* reflects the notion that a defendant properly bears the consequences of either forgoing otherwise available review of a conviction or failing to successfully demonstrate constitutional error. It is not always the case, however, that a defendant can be faulted for failing to obtain timely review of a constitutional claim. For example, . . . . after the time for direct or collateral review has expired, a defendant may obtain compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner. . . .

In such situations, a habeas petition directed at the enhanced sentence may effectively be the first and

only forum available for review of the prior conviction. As in *Daniels*, this case does not require us to determine whether, or under what precise circumstances, a petitioner might be able to use a § 2254 petition in this manner.

*Id.* at 405-06 (internal citations omitted).

Thus, the Supreme Court's opinions in *Coss* and *Daniels* strongly suggest that there are instances in which a fully served sentence may be collaterally challenged through a writ of habeas corpus. Furthermore, the Supreme Court's decision to explicitly note that exceptions should be available in cases of actual innocence demonstrates a serious underlying concern that the *Coss* and *Daniels* opinions would be misconstrued to elevate procedural requirements over more fundamental, substantive concerns.

The majority opinion makes much of the fact that "the Supreme Court has never suggested that jurisdictional barriers should be ignored based on the merits of the claim." *Ante* at 9 n.1. But the requirement that the petitioner be in "custody" is not the sole jurisdictional barrier to considering a habeas petition. A petitioner seeking relief under § 2254 must be not only "in custody," but in custody "pursuant to *the judgment* of a State court." 28 U.S.C. § 2254(a) (emphasis added). Similarly, § 2255, which applies to federal prisoners seeking habeas relief, requires that a petitioner in federal custody must attack the federal judgment under which he is in custody. 28 U.S.C. § 2255(a). Thus, under the habeas statutes, a petitioner is required, as a jurisdictional matter, to be in custody under the specific court judgment the petitioner seeks to attack via habeas.

In *Daniels*, however, the petitioner was in federal custody, but his motion to vacate challenged his prior robbery convictions, which were obtained in state court. 532 U.S. at 377. As already discussed, although the Supreme Court denied the

petitioner's habeas petition on other grounds, the Supreme Court allowed that such a petition could be brought in certain circumstances. 532 U.S. at 383-84. The circumstances identified by the Supreme Court in *Daniels*—"newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," 532 U.S. at 384—are precisely the circumstances present in the instant case.

Moreover, the lower court proceedings in *Maleng* reveal that the petitioner was in federal custody and yet filed a motion under § 2254 challenging a previous state conviction used to enhance a later state conviction, the sentence for which the petitioner had not yet begun to serve. *Cook v. Maleng*, 847 F.2d 616, 617 (9th Cir. 1988), *aff'd* 490 U.S. 488 (1989). The Supreme Court nevertheless held that the petitioner was "in custody" under the pending state sentences "even though he [was] not presently serving them," because the Supreme Court interpreted the detainer placed on the petitioner by the state of Washington as satisfying the jurisdictional "custody" requirement. *Maleng*, 490 U.S. at 493.

Through these rulings, the Supreme Court has certainly not ignored the jurisdictional requirements of § 2254 and § 2255 in *Maleng* and *Daniels*. Rather, the Supreme Court has "very liberally construed the 'in custody' requirement for purposes of federal habeas," although it has "never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction." *Maleng*, 490 U.S. at 492. This case likewise requires no such extension, as the panel agrees that the sexual offender registration requirements do unjustifiably restrain Wilson.

Indeed, the Supreme Court has consistently affirmed the indispensable precept that "'the principles of comity and finality informing'" procedural restrictions on habeas proceedings "'must yield to the imperative of correcting a funda-

mentally unjust'" scheme of punishment. *Schlup v. Delo*, 513 U.S. 298, 320-21 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). Accordingly, the writ "must retain the 'ability to cut through barriers of form and procedural mazes' . . . . 'to insure that miscarriages of justice within its reach are surfaced and corrected.'" *Hensley v. Mun. Court*, 411 U.S. 345, 350 (1973) (quoting *Harris v. Nelson*, 394 U.S. 286, 291 (1969)) (citations omitted). The Supreme Court has "rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements," *id.*, and such constructions would be particularly inappropriate in the context of compelling cases of actual innocence.

Consequently, although generally a petitioner who has completely served a sentence for a particular offense is precluded from challenging that fully expired conviction through a writ of habeas corpus, the majority opinion overstates this rule. The Supreme Court recognized in *Coss* that, when a defendant "obtain[s] compelling evidence that he is actually innocent of the crime for which he was convicted," a defendant may proceed on a writ of habeas corpus to collaterally attack a prior conviction for which the defendant had already served the sentence. 532 U.S. at 405. Importantly, in these situations, the Supreme Court explained that a habeas petition in federal court "may effectively be the first and only forum available for review of the prior conviction." *Id.* at 406. In these situations, federal habeas proceedings are the appropriate means of "providing . . . a meaningful avenue by which to avoid a manifest injustice." *Schlup*, 513 U.S. at 327.

Here, Wilson presents a compelling case for his actual innocence and appears to have no recourse available to him at this stage in Virginia.[4] In my view, the general rule articu-

---

[4]The majority suggests that Wilson may be able to state a *coram nobis* claim in Virginia State Court. *Ante* at 12-13. However, this does not seem

lated and refined by the Supreme Court in *Maleng*, *Daniels*, and *Coss* precluding a petitioner from challenging a fully expired prior conviction does not preclude Wilson from challenging his Virginia conviction. Instead, "the goals of easy administration and finality" underlying the Supreme Court's general rule, *see Daniels*, 532 U.S. at 383; *Coss*, 532 U.S. at 403-04, must give way in this case because Wilson "can [not] be faulted for failing to obtain timely review of [his] constitutional claim[s]" under circumstances where "after the time for direct or collateral review has expired, [Wilson] obtain[ed] compelling evidence that he is actually innocent of the crime for which he was convicted." *Coss*, 532 U.S. at 405. As the Supreme Court explained in *Coss*, "[i]n such situations, a habeas petition . . . may effectively be the first and only forum available for review of the prior conviction." *Id.* at 406. Although the relevant facts in *Daniels* and *Coss* did "not require [the Supreme Court] to determine whether, or under what precise circumstances, a petitioner might be able to use a § 2254 petition in this manner," *id.*, Wilson's case *does* necessitate such a determination, in the interests of fairness and to avoid manifest injustice. Because § 2254's "custody" requirement should be "liberally construed" in Wilson's case—a case that combines undisputed deprivations on Wilson's liberty, compelling claims of his actual innocence, and an absence of forum to redress Wilson's constitutional chal-

---

likely; Virginia has limited the reach of this writ to the correction of clerical errors. *See* Va. Code Ann. § 8.01-677; *Neighbors v. Commonwealth*, 650 S.E.2d 514, 518 (Va. 2007) (noting that *coram nobis* is not available "to serve as a writ of error to bring the original judgment under review" when there is newly discovered evidence); *accord Commonwealth v. Morris*, 705 S.E.2d 503, 506 (Va. 2011) (indicating that the writ is available only in event of "error[s] of fact . . . [that] would have *prevented rendition of the judgment*" by taking away the court's power to hand down a particular verdict) (emphasis in original). "[S]uch errors of fact include cases 'where judgment is rendered against a party after his death, or who is an infant.'" *Morris*, 705 S.E.2d at 507 (quoting *Dobie v. Commonwealth*, 96 S.E.2d 747, 753 (explaining that the writ "does not lie to correct any error in the judgment of the court . . .")).

lenges—in my view, the formalist concerns of the majority opinion should yield to the correction of fundamentally unjust punishments.

B.

I take further issue with the majority opinion's contention that the deprivations on liberty incident to Wilson's sexual offender registration requirements are too trivial and too collateral to satisfy the requirement that a habeas petitioner be in custody. This question is yet to be addressed in the Fourth Circuit, and, in my view, the majority opinion has erroneously relied on non-binding cases from our sister circuits that considered state sex offender registration requirements materially distinguishable from the registration requirements imposed on Wilson in Virginia and Texas.

The Supreme Court has long made it "clear that the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody." *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 300 (1984) (quotation omitted); *see also Jones*, 371 U.S. at 240 ("History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a [person's] liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.").

In *Jones*, for example, the Supreme Court held that a parolee continues to be in custody for habeas purposes because parole "imposes conditions which significantly confine and restrain [a person's] freedom." *Id.* at 243. In subsequent cases, the Supreme Court extended this holding to petitioners released after conviction on their own recognizance, *Hensley*, 411 U.S. at 351-52, as well as on bail, *Lefkowitz v. Newsome*, 420 U.S. 283, 291 n.8 (1975). The Supreme Court explained that the writ of habeas corpus "is not now and never has been a static, narrow, formalistic remedy; [but that] its scope has

grown to achieve its grand purpose–the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Jones*, 371 U.S. at 243.

Our sister circuits apply *Jones* and analyze the satisfaction of the custody requirement by looking to the severity of restraints upon personal liberty. *Compare Lillios v. New Hampshire*, 788 F.2d 60, 61 (1st Cir. 1986) (per curiam) ("[F]ines and [driver's license] suspensions . . . are not the sort of severe restraint on individual liberty for which habeas corpus relief is reserved." (quotation marks omitted)); *with Dow v. Circuit Court of First Circuit*, 995 F.2d 922, 923 (9th Cir. 1993) (per curiam) (custody requirement satisfied when petitioner sentenced to 14 hours of attendance at alcohol rehabilitation program).

In *Dow*, the Ninth Circuit held that a petitioner was in custody by virtue of a sentence requiring only "fourteen hours of attendance at an alcohol rehabilitation program . . . [which] could be scheduled [anytime] over [ ] a three-day or five-day period." *Id.* at 922-23. The court reasoned that: "[t]he sentence in this case, requiring [petitioner's] physical presence at a particular place, significantly restrains [petitioner's] liberty to do those things which free persons in the United States are entitled to do and therefore must be characterized, for jurisdictional purposes, as 'custody.'" *Id.* at 923.

Here, Wilson is subject to a litany of in-person reporting requirements in both Virginia and Texas that demand his presence at a particular place and particular time, and such obligations will extend the duration of Wilson's natural life.[5] In Virginia, Wilson is required to reregister in person with Virginia police: if he moves to a new residence, Va. Code

---

[5]Indeed, Wilson will be required to comply with similar, if not more severe, restraints on his liberty in all jurisdictions of the United States. *See* Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. §§ 16901, *et. seq.*

Ann. § 9.1-903(d); following any change of his place of employment, *id.* § 9.1-903(e); following any change of ownership information to a motor vehicle, watercraft and aircraft, *id.* § 9.1-903(f); and following any change in his enrollment or employment status with an institution of higher learning, *id.* § 9.1-906(a).[6]

Likewise, in Texas, Wilson is required to report in person to the Texas police: once each year to verify his registration information, Tex. Code Crim. Proc. Ann. art. 62.058(a); within seven days before and after any change of address, *id.* at 62.060, 62.051(a); and on an annual basis to renew his driver's license, *id.* at 62.060. Wilson is also required to comply with any request from Texas authorities for a DNA specimen. *Id.* at 62.061.[7]

Notwithstanding the severe restraints on Wilson's liberty occasioned by these sex offender registration requirements, the majority opinion states that "every court of appeals to have considered whether the registration requirements imposed on sex offenders place the sex offender in custody for purposes of habeas jurisdiction has concluded that they do not." *Ante* at 10. Based on this assertion, the majority opinion concludes that it "will not depart from this unanimous body of law." *Id.* However, the four circuit court opinions comprising this so-called "unanimous body of law" include three cases that are materially distinguishable from the present case, and one case that, in my view, was wrongly decided.

---

[6] Wilson is also required to: submit in person to be photographed by the Virginia police every two years, Va. Code Ann. § 9.1-904(c); and reregister in person or electronically with Virginia police within 30 minutes following any change of his electronic mail address information, any instant message, chat or other Internet communication name or identity information that he uses or intends to use. *Id.* § 9.1-903(f).

[7] If Wilson were to be homeless for more than seven days, he would be required to report to a supervising legal officer on a weekly basis. *See* Tex. Code Crim. Proc. Ann. art. 62.051(h).

In *Williamson v. Gregoire*, 151 F.3d 1180 (9th Cir. 1998), the Ninth Circuit, the first federal court of appeals to address the issue, concluded that Washington's sex offender registration statue did not render a defendant "in custody" for the purposes of 28 U.S.C. § 2254 because:

> The Washington sex offender law does not require Williamson even to personally appear at a sheriff's office to register; registration can be accomplished by mail. Thus, the law neither targets Williamson's movement in order to impose special requirements, nor does it demand his physical presence at any time or place.

*Id.* at 1184.

In *Leslie v. Randle*, 296 F.3d 518 (6th Cir. 2002), the Sixth Circuit relied heavily on the Ninth Circuit's reasoning in *Williamson* in holding that Ohio's sex offender registration statute did not render a petitioner "in custody" for habeas purposes:

> The Ninth Circuit has noted that the federal court "precedents that have found a restraint on liberty rely heavily on the notion of a physical sense of liberty-that is, whether the legal disability in question somehow limits the putative habeas petitioner's movement." *Williamson*, 151 F.3d at 1183. . . . The Ohio sexual-predator statute places no such constraints on Leslie's movement. Like the Washington sexual-predator statute discussed in *Williamson*, the Ohio statute applies to Leslie "whether he stays in the same place or whether he moves," *Williamson*, 151 F.3d at 1184.

*Id.* at 522.

Likewise, in *Virsnieks v. Smith*, 521 F.3d 707 (7th Cir. 2008), the Seventh Circuit considered a "Wisconsin sexual

offender registration statute . . . [that] d[id] not impose any significant restriction on a registrant's freedom of movement" because "registrants may [register and reregister] by mail" and "registrant[s] may update the [Department] with any changes by using a telephonic registration system." *Id.* at 719-20. The Seventh Circuit concluded, based on the lack of an in-person reporting requirement, that "the Wisconsin statute imposes minimal restrictions on a registrant's physical liberty of movement." *Id.* at 720.

The restraints on liberty suffered by Wilson under the Virginia and Texas sex offender registration statutes are materially different than the restraints enforced by mail considered by our sister circuits in *Williamson*, *Leslie*, and *Virsnieks*. Consequently, rather than refusing to depart from a "unanimous" body of law, the majority opinion has instead decided to follow the non-binding authority issued by a single panel of the Ninth Circuit in *Henry v. Lungren*, 164 F.3d 1240 (9th Cir. 1999). In *Henry*, without analysis, the Ninth Circuit concluded that "[r]egistration, even if it must be done in person at the police station, does not constitute the type of severe, immediate restraint on physical liberty necessary to render a petitioner 'in custody' for the purposes of federal habeas corpus relief." 164 F.3d at 1242.

I question the majority opinion's decision to follow the Ninth Circuit's decade-old summary decision in *Henry*. Uncontestably, the in-person reporting requirements applicable to Wilson in Virginia and Texas "significantly restrain [Wilson's] liberty to do those things which in this country free [people] are entitled to do," and, consequently, the majority opinion should squarely address the question of whether, *in the Fourth Circuit*, "[s]uch restraints are enough to invoke the help of the Great Writ."[8] *Jones*, 371 U.S. at 243.

---

[8]In addition to in-person reporting requirements, Wilson is subject to myriad municipal ordinances that restrict the movements of registered sex offenders. *See, e.g.*, Commerce, Tex., Code of Ordinances ch. 66, art. IV,

## II.

Our hands are not tied here; no precedent forecloses the relief sought in this case. Rather than blindly adhering to formalist procedural concerns, we should instead be guided by the equitable principles that traditionally govern the law of habeas corpus, *Munaf v. Geren*, 553 U.S. 674, 676 (2008), and by the Supreme Court's mandate to construe the "custody" requirement liberally, particularly in cases involving deprivations on liberty, credible claims of actual innocence, and an absence of forum for redress.

---

§ 66-102(2) (2007) (making it an offense to "be present in any college, school, daycare facility, city park or playground, or any public festival or celebration"); Killeen, Tex., Code of Ordinances ch. 16, art. VIII, § 16-141 (2007) (prohibiting the establishment of residence within 2,000 feet of any premises where children commonly gather); Stephenville, Tex., Code of Ordinances tit. XIII, § 130.82 (2007) (making it an offense to loiter within 300 feet of a child safety zone).

Given the Supreme Court's focus on freedom of movement in its analysis of whether a petitioner has established custody for habeas purposes, it may be necessary to consider the individual and cumulative impact of all regulations that restrict Wilson's movements, including municipal regulations, in a proper analysis of custody. In some jurisdictions, such as Iowa, Wilson would be prohibited from walking outside certain sex offender corridors. *See Doe v. Miller*, 298 F. Supp. 2d 844, 851 (S.D. Iowa 2004) (explaining that in Des Moines and Iowa City, "two thousand foot circles [in which sex offenders are prohibited from living] cover virtually the entire city area" with the exception of industrial areas and some of the cities most expensive neighborhoods, and that in smaller towns one "school or child care facility" can leave "the entire town . . . engulfed by an excluded area"); *cf. Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012) (sex offenders prohibited from entering any public library); *People v. Oberlander*, No. 02-354, 2008 WL 3390455, at *1 (N.Y. Sup. June 18, 2008) (convicted sex offender unable to live within walking distance of a synagogue as required by Orthodox Jewish religious requirements because he is he is forbidden to "live, work or loiter" within 1000 feet of "a public or private, elementary, middle or high school, child care facility, park, playground, public or private youth center, or public swimming pool").

I am deeply troubled that our legal system would be construed to prevent a person with compelling evidence of his actual innocence and wrongful conviction from accessing a forum in which to clear his name, while, at the same time, restrain the liberty of such a person under a regime created to surveil society's most disdained criminal offenders. That Wilson's completion of an arguably undeserved sentence is the condition that the majority opinion contends serves to seal off the courts is especially egregious. It is in effect an additional punishment that the majority opinion inflicts upon Wilson.

Because I believe the law does not compel the result reached by the majority opinion today, and that this Court has the authority—indeed, the moral imperative—to grant Wilson the hearing that he seeks, I respectfully dissent.